Leslie A. **LEWIS**, Plaintiff/Counter–Defendant/Appellee,

v.

John S. **MUCHMORE and Virginia L. Muchmore**, Defendants/Counter-Plaintiffs/Appellants.

Court of Appeals of Tennessee, at Jackson.

Feb. 9, 2000.

Application for Permission to Appeal Denied by Supreme Court July 24, 2000.

T. James Watson, Bartlett, TN, for defendants /counter-plaintiffs/appellants.

Roger A. Stone, Memphis, TN, for plaintiff/counter-defendant/appellee.

FARMER, J.

Leslie A. Lewis filed a detainer warrant in the General Sessions Court of Shelby County against John S. Muchmore and Virginia Muchmore alleging forcible entry and detainer (FED)[1] or unlawful detainer.[2] The court entered judgment for possession only and the Muchmores appealed to circuit court where the Muchmores brought a counter-complaint for specific performance of a real estate contract. Following a bench trial, judgment was entered in favor of the plaintiff, Leslie A. Lewis, restoring her to possession of the subject premises and dismissing the counter-complaint. This appeal resulted.

These parties entered into an agreement entitled Land Contract in June 1995 wherein Ms. Lewis agreed to sell and the Muchmores agreed to purchase real estate known as 4862 Durbin, Memphis, Tennessee. Pertinent parts of this agreement are as follows:

> Purchaser shall pay $3,500.00 cash to be paid at time of the signing of this contract; and, to assume and pay the balance of the existing FHA loan in the approximate amount of $42,800.00 held by Boatmen National Mortgage Company, 4041 Knight Arnold Road, Memphis, Tennessee. Payments are due on the first day of July, 1995 and on the first day of each and every month until the entire loan is paid. The payments are approximately $447.00 principal, interest, taxes, and insurance. The payments will be made to the Seller at 4586 North Summer Creek, Memphis, Tennessee 38141. The Seller will remit all payments to the Boatmen's National Mortgage Company, Memphis, Tennessee, immediately upon receipt. The payments must be received in the office of the mortgagee prior to the 15th day of the month or there will be a late charge in effect.
>
> . . . .
>
> Upon the purchaser obtaining a release of the Seller from the present loan or, through refinancing, prior to March 31, 1997, the Seller will provide to the Purchaser a Warranty Deed conveying title in fee simple except for the present first mortgage being assumed by the Purchaser and the existing restrictions, building lines, and easements of record. TIME IS OF THE ESSENCE TO AND IN THIS CONTRACT and the Seller does not make any promise, explicit or implied, that the date of March 31, 1997, will be extended for any reason.

---

1. T.C.A. § 29–18–102(a) defines forcible entry and detainer as follows:

 A forcible entry and detainer is where a person, by force or with weapons, or by breaking open the doors, windows, or other parts of the house, whether any person be in it or not, or by any kind of violence whatsoever, enters upon land, tenement, or possession, in the occupation of another, and detains and holds the same; or by threatening to kill, maim, or beat the party in possession; or by such words, circumstances, or actions, as have a natural tendency to excite fear or apprehension of danger; or by putting out of doors or carrying away the goods of the party in possession; or by entering peaceably and then turning or keeping the party out of possession by force or threat or other circumstances of terror.

 T.C.A. § 29–18–102(a) (1980).

2. T.C.A. § 29–18–104 defines unlawful detainer as follows:

 Unlawful detainer is where the defendant enters by contract, either as tenant or as assignee of a tenant, or as personal representative of a tenant, or as subtenant, or by collusion with a tenant, and, in either case, willfully and without force, holds over the possession from the landlord, or the assignee of the remainder or reversion.

 T.C.A. § 29–18–104 (1980).

. . . .

[The Purchaser agrees] [t]o pay the sum of $3,500.00 and assume the existing first mortgage deed of trust on the property. To make all payments as required by the mortgagee while in the premises. Further, the Seller will maintain the property and make necessary repairs at the Purchaser's expense without any obligation to the Seller. Further, the Purchaser agrees that he will obtain a release of the Seller from the obligation of the existing first mortgage or obtain financing and pay off the existing first mortgage thereby relieving the Seller of any obligation for payment of the existing first mortgage. The Seller agrees that this release will be made on or before March 31, 1997, and that failure to obtain such release will nullify this contract, that he will vacate the premises immediately, and the $3,500.00 down payment is forfeited without any refund being due. Should the Purchaser default by failure to pay monthly payments, obtaining a release, or in any other manner, the Seller may proceed with Forcible Entry and Detainer Warranty [sic] and recover possession of property and [judgment] for any paid notes while the Purchaser is in possession.

. . . .

[The Purchaser agrees] [t]o pay reasonable attorney fees and court costs if litigation is entered to regain possession should purchaser default on the terms of this instrument.

The Purchaser agrees to pay all 1995 real estate taxes on the property.

To keep the premises in accordance with all police, sanitary and other regulations imposed by any governmental authority.

. . . .

If the Purchaser shall fail to perform this contract or any part thereof, the Seller, ten days after such default, shall have the right to declare the same forfeited and void, and retain whatever may have been paid hereon, and all improvements that may have been made upon the premises together with additions and accretions thereto, and consider and treat the Purchaser as his tenant holding over without permission and may take immediate possession of the premises, and the Purchaser and each and every other occupant remove and put out. In all cases where a notice of forfeiture is relied upon by the Seller to terminate rights hereunder, such notice shall specify all unpaid moneys and other breaches of this contract and shall declare forfeiture of this contract effective in ten days after service, but not sooner than sixty days after default unless such money is paid and any other breaches of this contract are cured within that time.

If default is made by the Purchaser and such default continues for a period of ten days or more, and the Seller desires to foreclose this contract in equity, then the Seller shall have at her option the right to declare the contract breached, notwithstanding anything herein contained to the contrary.

Any declaration, notices or papers necessary or proper to terminate, accelerate or enforce this contract shall be presumed conclusively to have been served upon the Purchaser if such instrument is enclosed in an envelope with first class postage fully prepaid if said envelope is addressed to the Purchaser at the address set forth in the heading of this contract or at the latest other address which may have been specified by the Purchaser and receipted for in writing by the Seller, and if said envelope is deposited in a United States Post Office Box.

Notice of default of payment by the Purchaser is expressly waived. Further, any statutory right of redemption is expressly waived.

The pivotal issue at trial was whether the Land Contract, which by its explicit

terms expired on March 31, 1997, was extended by a modification agreement between the parties. The trial court held that it was not and the appellants take issue with this finding.

The issues as presented in the appellants' brief are as follows:

1. Did the trial court err in refusing to apply the Doctrine of *Res Judicata* in that the issue of the right of possession of the real property as between these parties arising under the LAND CONTRACT executed by them on 21 June, 1995, was tried before a court of proper jurisdiction, a verdict thereon was rendered in favor of the Defendants in that cause, and no appeal was taken therefrom?

2. Did the trial court err in refusing to dismiss the second Detainer Warrant as being the inappropriate method to join issues of legal versus equitable title under the Doctrine of Equitable Conversion and to determine the right of possession under an executory real estate sales [contract]?

3. Did the trial court err in refusing to apply the Doctrine of Prior Suit Pending in that the issue of the right of possession of the real property as between these parties arising under the LAND CONTRACT executed by them on 21 June, 1995, was in the nature of a compulsory counter-complaint under Tennessee Rules of Civil Procedure 13.01 in the Defendants' Chancery Court case and should have been brought in that pending cause for a complete adjudication of the parties' rights and obligations?

4. Did the trial court err in refusing to dismiss Plaintiff's second FED[3] action based upon the contractual requirements of paragraph 3(d) of the operative LAND CONTRACT which allowed the Defendants a period of sixty days after notice of default to cure any alleged default inasmuch as the second Detainer

Warrant was filed on 2 October, 1997, less than sixty days after the Plaintiff's letter of 21 August, 1997, assuming that letter is construed as the requisite notice being given?

5. Did the trial court err in refusing to dismiss Plaintiff's second FED action based on her persistent refusal to cooperate with the Defendants' efforts to process the assumption of the first mortgage and therefore the full performance of their obligations under the LAND [CONTRACT] by refusing to execute a release which would allow the commencement of that process, such refusal being in violation of the obligation or good faith imposed in every contract under the laws of this state?

■ With respect to the issue of *res judicata*, the counterclaim filed by the Muchmores states in paragraph 18 as follows:

That on 16 July, 1997, the Counter–Defendant filed an action of Forcible Entry and Detainer against the Counter–Plaintiffs in the General Sessions Court at docket number F130400F, the trial of which cause on 21 August, 1997, resulted in a verdict in favor of the Counter–Plaintiffs denying the Counter–Defendant['s] assertion[ ] to a right of possession of said property under the "Land Contract" of 21 June, 1995, and that the Counter Defendant-filed no appeal from said judgment within the time allowed by law.

The answer to the counterclaim states as follows:

On information and belief, Counter–Defendant admits the allegations contained in paragraph 18 of the Counter–Complaint.

■ Notwithstanding the admission in the answer, Ms. Lewis argues on appeal that there is no evidence in the record that the prior FED was decided on its merits.

---

**3.** Although the Muchmores originally took possession pursuant to contract, the parties at both trial levels and before this Court have referred to this as an FED action.

The admitted allegation in the counterclaim likewise does not aver that the matter was disposed of on its merits. The doctrine of *res judicata* is a rule that an existing final judgment rendered upon the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn.1995); *Shelley v. Gipson,* 218 Tenn. 1, 400 S.W.2d 709, 714 (1966). In order for *res judicata* to apply, the prior judgment must conclude the rights of the parties on the merits. *Goeke v. Woods,* 777 S.W.2d 347, 349 (Tenn.1989). In fact, according to the transcript of the general sessions hearing that is before this Court, Ms. Lewis testified that she did not provide the requisite notice [4] to the Muchmores when she filed the prior warrant. After reviewing the record, we find this argument to be valid. We find no evidence in the record why the first general sessions court ruled as it did in the prior FED proceedings and whether or not it was decided on the merits or dismissed because of a procedural defect. The burden is on the party raising the defense of *res judicata* to substantiate this defense. *Gregory v. Gregory,* 803 S.W.2d 242, 242 (Tenn.Ct.App.1990).

■ We do not find merit in Appellants' second issue that the doctrine of equitable conversion is applicable. They argue that under an executory contract for the sale of real estate, buyers hold legal title and sellers hold equitable title. Thus, they argue that when title is at issue, an FED action is prohibited because the estate, or merits of title shall not be inquired into in an FED action. T.C.A. § 29–18–119(c). We do not find it necessary to dwell upon this argument because, as will be discussed more fully, we concur with the trial court' decision that the contract expired on March 31, 1997 and was not extended or renewed. Therefore, upon termination of the contract, Appellants no longer had any interest in the subject property other than as tenants.

■ Appellants contend that the trial court erred in refusing to apply the doctrine of prior suit pending. They argue that, following receipt of a letter dated August 21, 1997 to them from Ms. Lewis giving them notice to vacate the premises, they filed an action in the Chancery Court of Shelby County for specific performance which was pending at the time the present action was filed in general sessions court. Under this doctrine, when an action is filed in a Tennessee state court having jurisdiction, the first court obtaining jurisdiction, as a general rule, obtains exclusive jurisdiction and an action filed in another Tennessee state court involving the same claim and parties is subject to a motion to dismiss. PIVNICK, TENN.CIRCUIT COURT PRAC. § 3–6 (1999 ed.). This doctrine has prevailed in this jurisdiction for over 100 years. *See Clark v. Garrett,* 74 Tenn. 262 (Tenn.1880). However, Appellants allege in their counterclaim and in their brief before this Court that a voluntary nonsuit was entered in the chancery court litigation "in order to bring their cause before this Honorable Court in the form of this counter complaint and that allegation is admitted in Appellee's answer." By nonsuiting the chancery court action, Appellants could no longer avail themselves of the doctrine of prior suit pending.

■ Appellants' arguments in support of issues 4 and 5 are basically that the trial court erred in finding that the Land Contract terminated on March 31, 1997 because the buyers had neither released the seller from the present loan or obtained refinancing.

Ms. Lewis contends that the Land Contract expired by its terms on March 31,

---

4. The Uniform Residential Landlord and Tenant Act, T.C.A. § 66–28–512(b) allows a landlord or tenant to terminate a month-to-month tenancy by written notice given to the other at least 30 days prior to the periodic rental date specified in the notice.

1997, because prior to that time, the Muchmores had neither assumed her present indebtedness on the property and released her nor had they obtained financing of their own. She contends that, pursuant to her notification to them, they became month-to-month tenants and, after a period of time, she terminated that tenancy by proper notice. It is the position of the Muchmores that, notwithstanding their failure to assume or obtain financing prior to March 31, 1997, Ms. Lewis agreed to a modification or extension of the contract to sell.

Ms. Lewis and Mr. Muchmore worked for the same employer. The parties initially executed a boilerplate document entitled Offer to Purchase Real Estate dated June 15, 1995. Ms. Lewis decided that she preferred to have a document prepared by an attorney. This resulted in the document titled Land Contract which was executed on June 21, 1995. As a result of the Muchmores' failure to assume the present indebtedness or obtain new financing prior to March 31, 1997, the following day, April 1, Ms. Lewis presented them with a handwritten note that the monthly rental would be $525 plus she would require a deposit. The Muchmores had, pursuant to the Land Contract, been paying the note payments to seller, who would then remit to her lender. In addition to setting forth the figures as outlined above, the note further stated:

John I told you here a while back, that if you really wanted to buy the house I wasn't in a hurry to sell it to someone else.

*I have been offered 48,000* [emphasis in original], from someone who had looked at it before. So I hope you *are* [emphasis in original] making an effort to buy it as we speak.

You have always paid on time, and so I am giving you a fair chance.

As you know, the contract had said to be done by March 31st.

Thanks, Leslie

Mr. Muchmore testified that, as a result of a letter from NationsBank Mortgage Corporation concerning a request for an assumption of the mortgage, NationsBank required a signed sales contract. He admitted that he submitted to NationsBank the June 15, 1995 Offer To Purchase Real Estate and that he unilaterally inserted language into that document that was not in the original agreement, including a closing date of September 30, 1997. He testified that, even though he knew that this document had been superseded by the Land Contract, his reason for doctoring the document and sending it to the mortgage company was because Ms. Lewis had told him that the Land Contract was null and void and also because of the expiration date of the Land Contract of March 31, 1997. He sent the document to the mortgage company on May 23, 1997. Mr. Muchmore admitted that they had occupied the property since 1995 and admitted receiving the letter from Ms. Lewis of August 21, 1997 giving them 30 days notice to vacate the property.

Ms. Lewis testified that the purpose of the note to the Muchmores of April 1, the day after the Land Contract expired, was to express her intention that, the contract having expired, the Muchmores were now renting the property from her. It was the further position of the Muchmores that Ms. Lewis had failed to cooperate with them in allowing them to assume the existing loan. Ms. Lewis testified that she was always willing to cooperate but no one ever contacted her and she did not feel it was her responsibility to initiate the process. The Muchmores had the option of either assuming her loan or obtaining new financing.

The trial court found that the Land Contract expired on March 31, 1997, that there was no modification or extension of that agreement, that the Muchmores became month-to-month tenants and that tenancy was properly terminated by Ms. Lewis. The court found that possession should be

granted to Ms. Lewis and dismissed the counter complaint.

 Our review of this matter is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the trial court's findings unless the preponderance of the evidence is otherwise. The construction of a contract requires a legal rather than a factual conclusion. *See, e.g., Standard Fire Ins. Co. v. Chester–O'Donley & Assocs., Inc.,* 972 S.W.2d 1, 5–6 (Tenn.Ct.App.1998)(citing *Rapp Constr. Co. v. Jay Realty Co.,* 809 S.W.2d 490, 491 (Tenn.Ct.App.1991); *Taylor v. Universal Tire, Inc.,* 672 S.W.2d 775, 777 (Tenn.Ct.App.1984)). Thus, our review of the trial court's legal conclusions is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.,* 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

 We agree with the trial court that the land contract expired on March 31, 1997 when the Muchmores failed to assume the present loan or obtain other financing prior to that date. The contract specifically states in bold print that time is of the essence and that the seller makes no promise, explicit or implied, that the date of March 31, 1997, will be extended for any reason. As this Court said in *Crye–Leike Realtors, Inc. v. Hay,* No. 02A01–9104–CV–00057, 1991 WL 192493 (Tenn.Ct.App. Oct. 1, 1991):

> Ordinarily, the inability of a party to close a real estate sales contract on a particular date is not considered to be a material breach of the contract since the general rule is that time is not of the essence in a real estate sales contract, unless otherwise specified in the contract. *Richmond v. Rone,* Tenn.App. W.S. (Feb. 27, 1991); *Thompson v. Menefee,* 6 Tenn.App. 118 (1927). In the present case the trial court specifically found that the parties to this contract had made time of the essence with regard to the December 31 closing date. In coming to this conclusion, the trial court relied on the language of the contract which states not only that the contract was to be closed on or before December 31, but also that the failure of the purchaser to pay for the property "as specified" in the contract shall give the seller the right to declare the contract cancelled.

*Crye–Leike Realtors, Inc.,* 1991 WL 192493, at *3.

We also agree with the trial court that the note written by Ms. Lewis of April 1, 1997, was not an offer or agreement to extend the Land Contract, but rather a reminder to the Muchmores that the Land Contract had expired on March 31, 1997. It further provided that she had received another offer, but was still willing to sell to the Muchmores. This note did not state that the conditions of sale would be the same as those contained in the Land Contract nor that she was offering to extend it.

Having reviewed this record, we are of the opinion that the evidence does not preponderate against the trial court's findings, nor do we disagree with his interpretation of the pertinent documents. Therefore, the judgment of the trial court is affirmed and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellants, John S. Muchmore and Virginia L. Muchmore, for which execution may issue if necessary.

CRAWFORD, P.J., W.S., and LILLARD, J., concur.