IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2006 Session

## LYN S. SUMMERS v. CHRISTOPHER J. RYAN

**Interlocutory Appeal from the Juvenile Court for Rhea County**
**No. 44-2088    James McKenzie, Judge**

_____

**No. E2006-01757-COA-R10-JV - FILED JANUARY 23, 2007**

_____

In this interlocutory appeal, the issue we address is which trial court – the Rhea County Family Court, the Williamson County Chancery Court, or the Rhea County Juvenile Court – has jurisdiction to adjudicate the parties' post-divorce disputes. We hold that pursuant to the prior suit pending doctrine, the tribunal where the first petition was filed, the Rhea County Family Court, has subject matter jurisdiction. We therefore dismiss the later-filed actions in Williamson County Chancery Court and Rhea County Juvenile Court, and vacate the orders entered by those courts.

**Tenn. R. App. P. 10 Interlocutory Appeal; Judgment of the Juvenile Court Vacated;**
**Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Rebecca E. Byrd and Lauren M. Spitz, Franklin, Tennessee, for the Appellant, Christopher J. Ryan.

Carol Ann Barron, Dayton, Tennessee, for the Appellee, Lyn S. Summers.

**OPINION**

*I. Background*

Christopher J. Ryan and Lyn S. Summers were divorced by order of the Circuit Court of Stafford County, Virginia, on March 9, 2005. The Virginia court's order incorporated the parties' marital dissolution agreement ("MDA"), in which they agreed "to share equally the legal responsibility for their minor children" and acknowledged that "this manner of decision making is joint legal custody as defined in Va. Code Ann. § 20-124.1." The MDA provided for Ms. Summers to have custody of the two minor children the majority of the time, with Mr. Ryan allowed approximately 145 days per year of custodial parenting time.

Five months after the MDA was signed, the parties executed an "addendum to property settlement agreement" that was also incorporated by reference in the Virginia court's divorce decree. In the addendum, the parties agreed that Mr. Ryan would relocate to Brentwood, Tennessee; that Ms. Summers would relocate to Dayton, Tennessee; that Mr. Ryan would have the same number of days and nights of visitation that he currently had under the MDA; and that the parties would create a new visitation schedule, reallocating the approximately 145 days and nights Mr. Ryan would have with the children. Mr. Ryan and Ms. Summers both moved from Virginia to Tennessee during the spring of 2005.

On April 25, 2006, Ms. Summers filed a "Petition to Domesticate a Foreign Judgment and for Modification and Contempt" pursuant to Tenn. Code Ann. § 26-6-104 in the Family Court of Rhea County, Tennessee. In her petition, Ms. Summers sought to domesticate the Virginia court's divorce decree, and to "enforce and modify" the Virginia court's judgment. Ms. Summers alleged that: (1) there had been substantial and material changes justifying a modification of the parties' parenting time; (2) Mr. Ryan's income had substantially increased, justifying an increase in his child support obligation; and (3) Mr. Ryan had willfully refused to fulfill certain obligations of the MDA regarding the marital property division and the required sale and/or transfer of certain assets to Ms. Summers.

On April 26, 2006, the day after Ms. Summers filed her petition, Mr. Ryan filed an affidavit in the Chancery Court for Williamson County, Tennessee, requesting that the Virginia court's divorce judgment "be registered with this Court pursuant to Tenn. Code Ann. § 36-5-2601 *et seq.* and that the Clerk and Master issue the proper notices to [Ms. Summers] as required by statute." Mr. Ryan did not request any affirmative relief from the court other than to register the Virginia court's divorce judgment.

On June 5, 2006, Ms. Summers filed a motion to dismiss the Williamson County Chancery action, alleging that it failed to state a claim upon which relief can be granted by the Chancery Court, that it should be dismissed for improper venue "in that a previous Petition to Domesticate the same involved foreign judgment has been previously filed in the Family Court of Rhea County" and because both she and the minor children lived in Rhea County, and that the Williamson County court should dismiss Mr. Ryan's action because her petition in Rhea County Family Court was first filed and pending.

On June 27, 2006, Ms. Summers filed a petition for emergency temporary custody in a third court – the Juvenile Court of Rhea County. In an *ex parte* order entered the same day, the Rhea County Juvenile Court granted Ms. Summers emergency temporary custody of the parties' children.

Three days later, Mr. Ryan filed his own petition for emergency temporary custody in the Williamson County Chancery Court. On July 5, 2006, the Williamson County Chancery Court entered an order denying Ms. Summers' motion to dismiss and finding that "Mother did not follow the statutory requirements of Tenn. Code Ann. § 36-6-229," the Uniform Child Custody Jurisdiction and Enforcement Act. The Williamson County Chancery Court stated that it "finds that the Family

Court of Rhea County, Tennessee, has not exercised jurisdiction of this case by the issuance of any Order in this matter" and concluded as follows:

> Therefore, the Court will retain jurisdiction of this matter in Williamson County, Tennessee based upon its finding that (1) the Petition filed by the Father on April 26, 2006 is the only request that is properly filed before any court in the state of Tennessee, (2) the Family Court of Rhea County, Tennessee has not yet accepted jurisdiction nor has it issued any rulings or Orders in this case and [Ms. Summers'] Petition to Domesticate a Foreign Judgment filed in the Family Court of Rhea County, Tennessee clearly does not comply with the statutory requirements of Tenn. Code Ann. § 36-6-229, and (3) the Juvenile Court of Rhea County does not have exclusive and original jurisdiction in custody issues and does not have subject matter jurisdiction of this action in that no Petition for Dependency and Neglect was filed and Mother had already sought the jurisdiction of the Family Court of Rhea County, Tennessee months earlier.

Following a hearing, the Williamson County Chancery Court entered an order on August 15, 2006, finding that "Mother has withheld the children from Father since June 27, 2006, not allowing any visitation..." and that "Father is entitled to 145 days and nights of visitation per year and that since January 1, 2006 until the date of the hearing, Father has only been able to exercise 55 days of visitation." The Williamson County Chancery Court further ruled that: (1) Mr. Ryan's petition for emergency temporary custody was granted, and that he was declared the primary residential parent pending a final hearing; (2) Mr. Ryan was entitled to 30 days of uninterrupted visitation with the children beginning August 14, 2006 "as soon as he can travel to Mother's home in Rhea County, Tennessee to pick-up the children;" (3) Ms. Summers "shall not interfere and shall cooperate in the transfer of the children;" and (4) "Father shall enroll the minor children in Williamson County schools and that he is the primary residential parent for purposes of doing so." Mr. Ryan's subsequent attempt to pick up the children from Ms. Summers' Rhea County home was unsuccessful.

On August 16, 2006, the day after the Williamson County Chancery Court's order, the Rhea County Juvenile Court entered an order holding that it "has exclusive original jurisdiction pursuant to Tenn. Code Ann. 37-1-103" and that "any Orders entered by any other Court of this State purporting to divest this Court of exclusive original jurisdiction, or assume jurisdiction of the subject matter in this cause, regardless of the date of entry, are hereby void and unenforceable."

Thereafter, Mr. Ryan sought permission to take an interlocutory appeal of the Rhea County Juvenile Court's ruling in the Eastern Section of this Court, and Ms. Summers also sought an interlocutory appeal of the Williamson County Chancery Court's ruling in the Middle Section of this Court. Both applications were granted pursuant to Tenn. R. App. P. 10, the interlocutory appeals were consolidated, and they are now before this Court.

-3-

## II. Issue Presented

The issue we address in this interlocutory appeal is which of the three trial courts involved in this matter – the Family Court of Rhea County, the Chancery Court of Williamson County, or the Juvenile Court of Rhea County – has jurisdiction to hear and decide this case.

## III. Standard of Review

"Whether a court has jurisdiction is a question of law over which our review is *de novo* with no presumption of correctness of the ruling of the lower courts." *Button v. Waite,* No. M2005-01553-SC-S10-CV, --- S.W.3d ----, 2006 WL 3613337, at *2 (Tenn. Dec. 12, 2006).

## IV. Analysis

Mr. Ryan's argument, in essence, is that because Ms. Summers allegedly did not file her petition in the Family Court for Rhea County in accordance with the technical requirements of Tenn. Code Ann. § 36-6-229, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), and Tenn. Code Ann. § 36-5-2602, the Uniform Interstate Family Support Act ("UIFSA"), the Rhea County Family Court did not acquire jurisdiction over the matter. Mr. Ryan argues that because he filed his affidavit attempting to register the Virginia divorce decree in strict accordance with the filing requirements of the UCCJEA and the UIFSA on the day after Ms. Summers' petition was filed, the Williamson County Chancery Court was the tribunal that first acquired jurisdiction over this case. We disagree, because we are of the opinion that the alleged shortcomings of Ms. Summers' petition to register a foreign judgment under the UCCJEA or UIFSA do not deprive the Rhea County Family Court of subject matter jurisdiction, but rather result in the foreign judgment being unregistered and unenforceable until the technical filing deficiencies are cured. Because Ms. Summers filed her petition first in Rhea County Family Court, and because that court has subject matter jurisdiction to hear the case, the Williamson County Chancery Court and the Rhea County Juvenile Court should have dismissed the subsequent actions filed by Mr. Ryan and Ms. Summers under the doctrine of prior suit pending.

Ms. Summers filed her petition "pursuant to Tenn. Code Ann. 26-6-104," which states that "a copy of any foreign judgment authenticated in accordance with the acts of congress or the statutes of this state may be filed in the office of the clerk of any circuit or chancery court of this state." Ms. Summers attached a copy of the Virginia court's divorce decree and requested that the Rhea County Family Court domesticate, enforce, and modify the Virginia court's order. The UCCJEA, upon which Mr. Ryan relies, provides the following regarding registration of a foreign judgment that makes a child custody determination:

> (a) A child-custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement, by sending to the appropriate court in this state:

(1) A letter or other document requesting registration;

(2) Two (2) copies, including one (1) certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified; and

(3) Except as otherwise provided in § 36-6-224, the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child-custody determination sought to be registered.

(b) On receipt of the documents required by subsection (a), the registering court shall:

(1) Cause the determination to be filed as a foreign judgment, together with one (1) copy of any accompanying documents and information, regardless of their form; and

(2) Serve notice upon the persons named pursuant to subdivision (a)(3) and provide them with an opportunity to contest the registration in accordance with this section.

(c) The notice required by subdivision (b)(2) must state that:

(1) A registered determination is enforceable as of the date of the registration in the same manner as a determination issued by a court of this state;

(2) A hearing to contest the validity of the registered determination must be requested within twenty (20) days after service of notice; and

(3) Failure to contest the registration will result in confirmation of the child-custody determination and preclude further contest of that determination with respect to any matter that could have been asserted.

Tenn. Code Ann. § 36-6-229. The UIFSA provides a similar procedure and filing requirements for registering a foreign "support order or income-withholding order" at Tenn. Code Ann. § 36-5-2602.

In his response to Ms. Summers' motion to dismiss filed in Williamson County Chancery Court, Mr. Ryan argued that Ms. Summers did not file two copies, including one certified copy, of

the Virginia judgment, and that she did not include "a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified" in her Rhea County Family Court petition as the UCCJEA requires. Tenn. Code Ann. § 36-6-229(a)(2) and (3). Further, Mr. Ryan argued that the Rhea County Family Court did not provide him with notice as required by Tenn. Code Ann. § 36-6-229(b) and (c). The Williamson County Chancery Court agreed with Mr. Ryan and stated that it would "retain jurisdiction" of the matter. In determining whether the Williamson County Chancery Court erred in so doing, we examine the jurisdiction of the Rhea County Family Court.

The general principles defining the concept of a court's jurisdiction in Tennessee are well established. As this court has previously instructed on several occasions,

> The concept of jurisdiction involves a court's authority to adjudicate a particular controversy. *See Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn.1977). In order to acquire jurisdiction, a court must have jurisdiction not only over the parties but also over the subject matter of the proceeding. The concept of subject matter jurisdiction concerns a particular court's authority to hear a particular type of case. *See Meighan v. U.S. Sprint Comm. Co.,* 924 S.W.2d 632, 639 (Tenn.1996); *Turpin v. Conner Bros. Excavating Co.,* 761 S.W.2d 296, 297 (Tenn.1988). It relates to the nature of the cause of action and the relief sought, *see Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn.1994), and can only be conferred by the Constitution of Tennessee or by statute. *See Kane v. Kane,* 547 S.W.2d at 560; *Brown v. Brown,* 198 Tenn. 600, 618-19, 281 S.W.2d 492, 501 (1955).

> When more than one court has been given jurisdiction to adjudicate a particular type of controversy, subject matter jurisdiction may also be influenced by matters of comity and judicial efficiency. Thus, when two courts have concurrent subject matter jurisdiction, the first court to acquire jurisdiction over a particular case takes exclusive jurisdiction to end the matter. *See American Lava Corp. v. Savena,* 476 S.W.2d 639, 640 (Tenn.1972); *Robinson v. Easter,* 208 Tenn. 147, 149, 344 S.W.2d 365, 366 (1961); *Wilson v. Grantham,* 739 S.W.2d 776, 777 (Tenn.Ct.App.1986). The actions of a court that attempts to exercise jurisdiction over a case after another court with concurrent jurisdiction has already exercised jurisdiction are nullities. *See State v. Hazzard,* 743 S.W.2d 938, 941 (Tenn.Crim.App.1987).

*State ex rel. McPeek v. Long*, No. E2005-01670-COA-R3-CV, 2006 WL 1163077, at *1-2 (Tenn. Ct. App. E.S., Apr. 28, 2006) (*quoting State ex rel. Whitehead v. Thompson,* No. 01A01-9511-CH-00538, 1997 WL 749465, at *2 (Tenn. Ct. App. M.S., Dec. 5, 1997)); *see also In re S.L.M., —*

S.W.3d —, No. M2005-02423-COA-R9-JV, 2006 WL 2052342, at *4 (Tenn. Ct. App. M.S., July 24, 2006).

We note at the outset that this is not an interstate dispute between courts in Tennessee and Virginia. Both parties agree that Tennessee is the proper state to hear and decide the dispute, and that no provision in the UCCJEA or the UIFSA precludes a Tennessee court from properly exercising jurisdiction. At the time of Ms. Summers' petition, both parents and the children had lived in Tennessee for approximately one year. *See Button,* 2006 WL 3613337, at *3-4. Thus, the provisions of the UCCJEA are of relatively limited relevance in this case. *Cf. McElhaney v. Chipman,* 647 S.W.2d 643, 644 (Tenn. Ct. App. 1982) (noting that Tennessee's Child Custody Jurisdiction Act (precursor to the UCCJEA) "was designed and intended to resolve custody disputes involving parties in different states, not different counties").

The Rhea County Family Court was created by Private Acts of 1997, Chapter 92, which provides that the Family Court "is a court of record," and further states in relevant part as follows:

> The Family Court shall have jurisdiction in all juvenile cases, proceedings, and all powers, duties and authority as provided by general law relative to the jurisdiction, authority, conduct, procedure, powers, duties and appellate review of the Juvenile Courts.
>
> \*                     \*                     \*
>
> The Family Court shall have concurrent jurisdiction, powers and authority with the Chancery and Circuit Courts to hear and determine

all cases of divorce, annulment, alimony and separate maintenance, support under interstate compacts, domestic relations, and all other proceedings and all other relief incident thereto together with full power and authority conferred upon the Chancery and Circuit Courts to enforce all its orders, decrees and judgments.

We are of the opinion that the legislature has conferred subject matter jurisdiction to hear this domestic dispute upon the Family Court of Rhea County by this Private Act.

Mr. Ryan has cited no authority supporting his theory that a court is deprived of subject matter jurisdiction because a petition filed in that court to register a foreign judgment and requesting other post-divorce affirmative relief does not meet the technical statutory requirements for registration. In the case of *Cliburn v. Bergeron,* the mother argued that the father did not meet the requirements of Tenn. Code Ann. § 36-6-229 because his petition contained a statement signed by his attorney instead of the father himself. *Cliburn,* Nos. M2002-01386-COA-R3-CV and M2001-03157-COA-R3-CV, 2002 WL 31890868, at *15-16 (Tenn. Ct. App. M.S., Dec. 31, 2002). The *Cliburn* court noted that "[t]he issues raised in this appeal *are not addressed to jurisdictional deficiencies.* Instead, Mother alleges that Father's petition failed to meet certain procedural requirements." *Id.* at *15 (emphasis added). The *Cliburn* court upheld the trial court's ruling granting the father's petition to register and enforce a Louisiana custody decree. *Id.* at *16.

We emphasize that the procedural filing requirements of the UCCJEA and UIFSA are not insignificant or unimportant, and they must be followed in order to properly register a foreign judgment in those circumstances where those acts apply. The importance of the filing and notice requirements is illustrated by the recent Supreme Court case of *Jolly v. Jolly*, 130 S.W.2d 783 (Tenn. 2004), wherein the wife failed to follow the UIFSA's procedure for domesticating the foreign judgment. The *Jolly* Court held that the trial court erred in enforcing a foreign judgment, "because the Kansas court's decree was never registered in Tennessee and Husband was never provided notice of the registration or an opportunity to contest the validity and enforcement of the decree." *Id.* at 788. The Court concluded that "[o]n remand, the chancery court shall ensure that the registration and notice procedures set forth in UIFSA are followed and shall consider the defenses raised by Husband before determining whether the Kansas court's decree should be enforced." *Id.* While *Jolly* instructs that a court must ensure that the statutory procedures are followed before registering and enforcing a foreign judgment, it does not stand for the proposition that a technically insufficient petition creates a jurisdictional deficiency or removes subject matter jurisdiction from a court that otherwise has jurisdiction.

Having determined that the Family Court of Rhea County had subject matter jurisdiction, we conclude that the Williamson County Chancery Court and Rhea County Juvenile Court should have dismissed the later-filed actions in those courts pursuant to the doctrine of prior suit pending. The Supreme Court recently provided as follows regarding the prior suit pending doctrine:

> For well over a century our courts have consistently held that where two courts have concurrent jurisdiction over a matter, the first of those courts to acquire jurisdiction takes exclusive jurisdiction over it. Any subsequent actions must, therefore, be dismissed. In courts of concurrent jurisdiction, that court which first acquires jurisdiction thereby acquires exclusive jurisdiction. Thus, if there is another suit pending in a court of concurrent jurisdiction between the same parties, concerning the same subject matter, and for the same object, the defendant to the second suit may plead the pendency of the former suit as a defense to the second. *Metro. Dev. & Housing Agency v. Brown Stove,* 637 S.W.2d 876, 878 (Tenn.Ct.App.1982) (hereinafter "MDHA").
>
> The purpose of, and rationale behind, the doctrine of prior suit pending is nothing less than to maintain the integrity of the judicial system and to preserve that unquestioned authority and rank that makes it possible. *Id.* at 882. A similar, but not identical, principle operates in the federal system, there termed the "first-filed" rule. This "first-filed" rule was developed in order to avoid the danger of inconsistent results and the duplication of judicial effort. *Martin v. Townsend,* 1990 U.S. Dist. LEXIS 13955, No. 90-2616, 1990 WL 159923, at *4 (D.N.J. Oct.15, 1990).

&ast; &ast; &ast;

Not only have Tennessee courts consistently recognized the doctrine of prior suit pending, they have been uniform in delineating the requirements prerequisite to its being applied. It has been clearly established, and held repeatedly, that in order for the doctrine of prior suit pending to apply, three conditions must be met; they are as follows:

(1) The two cases must involve identical subject matter, and

(2) The suits must be between the same parties, and

(3) The former suit must be pending in a court of this state having jurisdiction over both the subject matter and the parties.

Each of these three conditions must be met in order for the doctrine to be properly invoked. *MDHA,* 637 S.W.2d at 879 (citing *Cockburn v. Howard Johnson, Inc.,* 215 Tenn. 254, 385 S.W.2d 101 (1964)).

*Estate of McFerren v. Infinity Transport, LLC*, 197 S.W.3d 743, 746 (Tenn. 2006).

In the present case, it is clear that the first two conditions have been met.  Mr. Ryan argues, and the Williamson County Chancery Court apparently agreed, that something more than an initial filing must occur for a court to "acquire" jurisdiction, and thus for a prior lawsuit to be "pending" such that the doctrine applies to bar a second suit.  This argument does not find support in the applicable Tennessee caselaw.  In *American Lava Corp. v. Savena,* 476 S.W.2d 639 (Tenn. 1972), the Supreme Court was presented with the same circumstance as in this case – two lawsuits between the same parties and involving the same subject matter, filed one day apart.  The *American Lava Corp.* Court concisely held: "[s]ince this suit was filed the day before the Circuit Court suit was filed it therefore was prior in right.  Upon the Criminal Court having acquired jurisdiction that jurisdiction became exclusive."  *Id.* at 640.  In *Lewis v. Muchmore,* 26 S.W.3d 632 (Tenn. Ct. App. 2000), this Court stated that under the prior suit pending doctrine, "*when an action is filed* in a Tennessee state court having jurisdiction, the first court obtaining jurisdiction, as a general rule, obtains exclusive jurisdiction and an action filed in another Tennessee state court involving the same claim and parties is subject to a motion to dismiss."  *Id.* at 637 (emphasis added).

Further, in *Staats v. McKinnon*, — S.W.3d —, No. M2005-01631-COA-R9-CV, 2006 WL 1168826 (Tenn. Ct. App. M.S., May 2, 2006), a case involving the UCCJEA, the court noted that "[j]urisdiction attaches at the commencement of a proceeding, Tenn. Code Ann. § 36-6-217 cmt., and the UCCJEA defines "commencement" as "the filing of the first pleading in a proceeding," Tenn. Code Ann. § 36-6-205(5)."  *Id.* at *10.  We hold that the Rhea County Family Court acquired jurisdiction on April 25, 2006, at the time Ms. Summers filed her petition.

### *V. Conclusion*

Pursuant to the prior suit pending doctrine, the judgments and orders of the Williamson County Chancery Court and the Rhea County Juvenile Court are vacated and held for naught, because those courts lacked subject matter jurisdiction. Mr. Ryan's action in Williamson County Chancery Court and Ms. Summers' action in Rhea County Juvenile Court are hereby dismissed. The Family Court of Rhea County has exclusive jurisdiction to hear and decide the issues raised in Ms. Summers' petition. Upon remand, the Rhea County Family Court shall ensure that the filing and notice requirements of the applicable Tennessee statutes are complied with in order to properly register the Virginia divorce decree, and Mr. Ryan shall be permitted to raise those defenses allowed by Tenn. Code Ann. §§ 36-6-229(d) and 36-5-2607. Costs on appeal are assessed to Christopher J. Ryan.

_____
SHARON G. LEE, JUDGE