# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 22, 2014 Session

## WILLIAM E. KANTZ, JR. v. HERMAN C. BELL ET AL.

### Appeal from the Circuit Court for Davidson County
No. 12C3256     Carol Soloman, Judge

### No. M2013-00582-COA-R3-CV - Filed August 15, 2014

This dispute concerns a contract for the sale of real property. Believing the seller was impairing the buyer's ability to close on time in order to sell the property under contract to someone else, the buyer filed this action to enjoin the seller from transferring the property to another and to require the seller to provide documentation necessary to close. The buyer also asserted claims for specific performance of the contract, breach of contract, and conspiracy against the seller, as well as claims for tortious interference with the contract and conspiracy against another defendant. The trial court found that the seller's discussions with another potential buyer were merely to have a "back-up plan" in the event the buyer did not close; nevertheless, the court granted injunctive relief by extending the deadline to close the sale by thirty days and enjoined the seller from selling the property to another in the interim. One week later, the sale closed. The plaintiff then amended its complaint to limit its claims to breach of contract against the seller, and tortious interference with a contract and conspiracy against the seller and the party alleged to have tortiously interfered with the contract. The defendants filed motions to dismiss for failure to state claims for which relief could be granted pursuant to Tenn. R. Civ. P. 12.02(6). The trial court found that the seller did not breach the contract because the property was conveyed to the plaintiff pursuant to the terms of the contract and the delay in closing was not a breach of the contract. The court dismissed all other claims but for the conspiracy claims and declared the order a final appealable judgment pursuant to Tenn. R. App. P. 54.02. The plaintiff appealed. Finding no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

James D. R. Roberts, Jr. and Janet L. Layman, Nashville, Tennessee, for the appellant, William E. Kantz, Jr. Irrevocable Trust.

Andre P. Johnson, Nashville, Tennessee, for the appellee, Herman C. Bell.

Mark A. Polk, Murfreesboro, Tennessee, for the appellee, Scott Findlay.

**OPINION**

The William E. Kantz, Jr. Irrevocable Trust ("Plaintiff") entered into a Contract for the Sale of Real Estate ("the Contract") on April 13, 2012, to purchase real estate from Herman C. Bell ("Seller").

After entering into the Contract with Seller, but prior to the closing, Plaintiff engaged in negotiations with Scott Findlay whereby Findlay and Plaintiff would jointly develop the property in consideration of Findlay providing additional capital. Over the next few days, Plaintiff also approached Quincy McKnight, who had experience in arranging financing, seeking his assistance to procure a loan for Findlay. In the interim, Plaintiff presented an Assignment of Contract for the Purchase of Real Estate to Findlay and advised Findlay of the damages they would incur if the rapidly approaching closing date of August 1, 2012, was missed. Findlay responded that he would not enter into the assignment until after his loan was approved; Findlay never obtained approval of a loan and no written agreement was executed between Plaintiff and Findlay.

On July 21, 2012, Seller and Plaintiff amended the contract to extend the closing date to August 20, 2012, in exchange for an additional down payment of $5,000. Around the same time, McKnight and Findlay ceased communicating with Plaintiff after which Plaintiff became suspicious that Findlay was tortiously interfering with Plaintiff's contract to purchase the property at issue with the goal of purchasing it for himself.

On August 10, 2012, Plaintiff was informed that the "plat" had been approved by the Davidson County Planning Commission, but could not become final until signed by Seller, and that Plaintiff could not complete his financing without the finalization of the "plat." Thereafter, Plaintiff's repeated attempts to contact Seller were to no avail and, on August 14, 2012, the closing attorney, who had been selected by Seller, notified Plaintiff that Seller had decided to "sell to someone else."

On the following day, August 15, 2012, Plaintiff commenced this action by filing a Request for a Temporary Restraining Order and Complaint for Specific Performance Breach

of Contract, Unjust Enrichment, Tortious Interference with a Contract, and Conspiracy ("Original Complaint"), against Seller and Findlay (collectively "Defendants").[1]

Following a hearing on August 17, 2012, concerning the application for a restraining order, the trial court found that Plaintiff was prepared to close, however, it could not close until Seller signed certain documents that were necessary to obtain financing and convey good title.[2] As for the alleged breach of contract and tortious interference with a contract, the court's order additionally provided:

> Based upon information given to [Seller] by Mr. McKnight, [Seller] believed that . . . [Plaintiff] would not be able to close at the time required by the contract. As a "back up plan," Mr. McKnight facilitated an agreement between [Seller] and [Mr. Findlay] to purchase the property on the same terms as the contract into which [Seller] and [Plaintiff] had previously entered.

Based upon these and other facts cited by the trial court, the court granted a temporary injunction upon the following terms:

> a. The date for closing between [Plaintiff] and [Seller] is extended through September 13, 2012;
>
> b. Until that time, [Seller] is prohibited from selling, gifting, or otherwise conveying by any means the property . . . to any other person or entity, including but not limited to Mr. Scott Findlay; and,
>
> c. [Seller] is compelled to obtain and produce the documents necessary for conveying good title to [Plaintiff] not later than September 13, 2012.

The closing on the sale of the property occurred on August 29, 2012.[3] After acquiring the property, Plaintiff filed an Amended Complaint for Breach of Contract, Tortious

---

[1]McKnight was also a defendant but he soon filed a Chapter 13 petition for bankruptcy, and Plaintiff voluntarily dismissed all of his claims against McKnight. An order dismissing McKnight from the lawsuit was entered on August 28, 2013, and he is not a party to this appeal.

[2]These documents included obtaining a TennCare Release from the State of Tennessee; an Inheritance Tax Clearance form from the Tennessee Department of Revenue for Seller's deceased parents, co-owners of the property; and notarized Affidavits of Heirship regarding his status as the heir at law for each of his deceased parents.

[3]An order dissolving the temporary injunction was entered on September 20, 2012.

Interference with a Contract, and Conspiracy ("First Amended Complaint") on September 13, 2012. Plaintiff asserted, *inter alia*, that due to Seller's delay and the interference of Findlay and McKnight, Plaintiff suffered damages in excess of $190,000. Specifically, the breach of contract claim reads:

33. [Plaintiff] fulfilled each and every part of its requirements under the Contracts;

\*\*\*

35. [Plaintiff] has been damaged by its reliance on the Contracts;

\*\*\*

37. [Plaintiff] purchased the property for the purpose of constructing a duplex on the same and expected to realize a new profit of $240,000.00;

38. As a result of the breach and interference with the Contracts, [Plaintiff] lost $190,000.00 in profits when [it] was unable to develop the property with a partner.

39. [Plaintiff] is entitled to damages in the amount of $190,000.00, plus reasonable attorneys fees and costs[.]

Seller and Findlay responded by filing motions to dismiss the First Amended Complaint pursuant to Tenn. R. Civ. P. 12.02(6); Findlay, alternatively, moved for a more definite statement. After a hearing on these motions, the trial court found that Seller did not breach his contract with Plaintiff as he conveyed the property to Plaintiff pursuant to the contract but for missing the closing date. Further, the court found Plaintiff's claim that it could not obtain financing due to Seller's failure to sign the "plat" was not a breach of contract. The court also concluded that the tortious interference claim must fail due to the court's finding that Seller had not breached the underlying contract. The court entered a final order on December 14, 2012, dismissing Plaintiffs claims against all Defendants for breach of contract and tortious interference with a contract.[4]

---

[4]The court did not dismiss the conspiracy claims against Defendants; in regards to Mr. Findlay's motion, the court required Plaintiff to provide a more definite statement of his claim for conspiracy against Mr. Findlay.

Subsequently, Plaintiff filed two motions: (1) a Motion Under Rule 59 to Alter or Amend the trial court's December 14, 2012 judgment[5], and (2) a Motion for Leave to File Second Amended Complaint. In these motions, Plaintiff alleged, *inter alia*, that an anticipatory breach of the contract, which it contends was proven by the court's temporary injunction order forcing Seller to perform, entitled Plaintiff to a remedy of its actual damages. Defendants opposed both motions insisting the property was transferred pursuant to the contract and Plaintiff's claim of an anticipatory breach of contract was being raised for the first time. Defendants contended a claim for anticipatory breach of contract requires different elements necessary to establish a prima facie case and should have been pled specifically in the complaint.

The trial court denied both of Plaintiff's motions finding that the proposed Second Amended Complaint was so similar to the First Amended Complaint that to allow the proposed amendment would be futile. The trial court then dismissed all claims against Defendants, with the exception of the conspiracy claim.[6] It is from this order Plaintiff appeals.

Plaintiff presents two issues for our review. Plaintiff contends the trial court erred in dismissing pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief can be granted the claims asserted in his First Amended Complaint for breach of contract and tortious interference with a contract. Plaintiff also contends the court erred in denying its motion for leave to file a Second Amended Complaint.

## ANALYSIS

In its first issue, Plaintiff challenges the propriety of granting Defendants' Rule 12.02(6) motion to dismiss for failure to state claims upon which relief can be granted. The standards by which Tennessee courts are to assess a Rule 12.02(6) motion to dismiss are well established. "A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id*. By filing a motion to dismiss the defendant "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Id*. (citations omitted).

---

[5]The Rule 59.04 Motion to Alter or Amend was denied by the trial court; the Trust does not appeal that ruling.

[6]Pursuant to Tenn. R. Civ. P. 54.02, the trial court designated the order as final and appealable.

When a complaint is challenged by a Rule 12.02(6) motion, the complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997)). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id*. (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

## I. BREACH OF CONTRACT

A claim for breach of contract requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). The existence of an enforceable contract is undisputed; thus, the issue before our review is whether there was nonperformance amounting to a breach of the contract and, if so, whether damages were caused by the breach.

The First Amended Complaint, which is the complaint at issue as it pertains to Plaintiff's claim of breach of contract against Seller, states in pertinent part:

29. On August 29, 2012, *the sale of property closed*.

30. However, *because of [Seller's] delay* and the other defendants' interference with the sale, *[Plaintiff] suffered damages in excess of $190,000.00.*

\*\*\*

33. Plaintiff fulfilled each and every part of its requirements under the Contracts;

\*\*\*

39. *[Plaintiff] is entitled to damages in the amount of $190,000.00*, plus reasonable attorneys fees and costs[.]

The foregoing reveals that Plaintiff's claim for breach of contract against Seller is based on the factual allegations that Seller's *delay* in closing caused Plaintiff to suffer damages of $190,000. The trial court acknowledged the allegation that Seller caused delays but found, as a matter of law, that the alleged delays caused by Seller did not constitute a breach of the contract. We agree with this ruling because, "[o]rdinarily, the inability of a party to close a real estate sales contract on a particular date is not considered to be a material

breach of the contract since the general rule is that time is not of the essence in a real estate sales contract, unless otherwise specified in the contract." *Lewis v. Murchmore*, 26 S.W.3d 632, 639 (Tenn. Ct. App. 2000) (quoting *Crye-Leike Realtors, Inc.*, No. 02A01-9104CV00057, 1991 WL 192493, at *3 (Tenn. Ct. App. Oct. 1, 1991); *also see Thompson v. Menefee*, 6 Tenn. App. 118, 128 (Tenn. Ct. App. 1927).

Neither the Original Contract nor the amended contract, which are incorporated in the First Amended Complaint, state that "time is of the essence." Moreover, the mere statement in the First Amended Complaint that Plaintiff suffered damages because of Seller's delay is not sufficient to constitute a factual allegation that time was of the essence. To the contrary, the facts alleged in the complaints reflect that two extensions to the closing date were agreed upon. The Original Contract provided that the closing date would be "on or before thirty (30) days from the completion date of the due diligence period." The Original Contract stated: "Buyer will begin its due diligence review of the Property upon the signatures to this agreement and shall have thirty (30) business days from the execution of this agreement to conduct investigations of the Property." On May 21, 2012, handwritten amendments were made to the Original Contract which extended the due diligence review period from 30 days to 60 days, which in turn would extend the closing date.[7] Another extension to the closing date was made at the request of Plaintiff on July 21, 2012. Plaintiff's First Amended Complaint states that "[i]n exchange for an additional $5,000.00 payment, [Seller] extended the time in which Plaintiff had to close to August 20, 2012." Thus, Plaintiff's own allegations reveal that it sought extensions to the closing; thus, an early closing could not have been of the essence to Plaintiff.

Moreover, not only did the contracts fail to state that time was of the essence in regard to the various closing dates the parties agreed upon, none of the contracts established what would happen if the property failed to close on the respective closing date, a fact this court found significant in *Tatum v. Worsham*, No. 03A01-9507-CH-00219, 1996 WL 87453, *2 (Tenn. Ct. App. Mar. 1, 1996). In *Tatum*, the seller insisted that time was of the essence, that the buyers breached the land sales contract by being unable to close on a specified date, and that the contract had expired on that date. *Id*. The buyers countered by suing the seller for specific performance of their contract. The chancellor found that time was not specifically made of the essence by the terms of the agreement, and although the agreement provided a date for closing, it did not specify what would happen if the sale was not closed by that date, and granted the buyers' specific performance of the contract, awarded the buyers monetary damages, and ordered that a closing take place. *Id*. We affirmed. *Id*.

---

[7]According to Plaintiff, these changes were necessitated by "rock issues"; "moving of a sewer line"; and designation of the property as a "reserve lot."

The mere fact the closing occurred after the agreed upon closing date does not constitute a breach of the contract for "the inability of a party to close a real estate sales contract on a particular date is not considered to be a material breach of the contract since the general rule is that time is not of the essence in a real estate sales contract, unless otherwise specified in the contract." *Crye-Leike Realtors, Inc.*, 1991 WL 192493, at *3; *Thompson v. Menefee*, 6 Tenn. App. at 128 (Tenn. Ct. App. 1927). Moreover, Plaintiff's First Amended Complaint provides little more than averments showing that Plaintiff wants relief and it believes it is entitled to relief due to a mere nine day delay in closing. Without alleging facts sufficient to establish an agreement that time was of the essence as it pertained to the August 20 closing date, the complaint failed to state a claim for breach of contract upon which relief could be granted. We, therefore, affirm the dismissal of this claim pursuant to Tenn. R. Civ. P. 12.02(6).

## II. TORTIOUS INTERFERENCE WITH A CONTRACT

A claim for tortious interference with a contract requires the plaintiff to prove the following seven elements: (1) a legal contract existed; (2) the defendant had knowledge of the existence of the contract; (3) the defendant had an intent to induce the breach of the contract; (4) the defendant acted maliciously; (5) *the contract was breached*; (6) the act complained of is the proximate cause of the breach; and (7) the plaintiff suffered damages due to the breach. *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999) (citing *Dynamic Motel Management, Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975)) (emphasis added).

Plaintiff's breach of contract claim has been dismissed. Therefore, Plaintiff can not establish one of the essential elements of a claim for tortious interference with a contract, that being the element that the contract was breached. Accordingly, we affirm the trial court's dismissal of this claim under Tenn. R. Civ. P. 12.02(6).

## III. MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

After the trial court dismissed all of the claims Plaintiff asserted in its First Amended Complaint but for the conspiracy claim, Plaintiff filed a motion for leave to file a Second Amended Complaint. The trial court denied Plaintiff's motion stating, "the Second Amended Complaint, filed contemporaneously with this motion, was so similar to the First Amended Complaint that to allow the proposed amendment would be futile."

The grant or denial of a motion to amend a pleading is within the sound discretion of the trial court. *See* Tenn. R. Civ. Pro. 15.01; *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007). Although permission to amend should be liberally granted, the

decision "will not be reversed unless abuse of discretion has been shown." *Cumulus Broadcasting, Inc.* 226 S.W.3d at 366. Factors the trial court should consider when deciding whether to allow amendments include "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Id*. "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Having reviewed the proposed Second Amended Complaint we find that it contains no substantive changes from the First Amended Complaint; thus, as the trial court found, granting leave to amend the complaint would have been futile.

Accordingly, we find the trial court did not abuse its discretion in denying the motion for leave to amend as the proposed amendment would be futile. Therefore, we affirm the decision of the trial court.

## IV. ANTICIPATORY BREACH OF CONTRACT

Although not identified as an issue in its brief, Plaintiff contends at various points within its brief that it asserted a claim for anticipatory breach of contract.[8] Plaintiff further asserts it is entitled to pursue such a claim for the damages it suffered as a result of Seller's anticipatory repudiation of the contract. We have determined that such a claim was not timely or properly asserted in the trial court; thus, it was waived. We have also concluded that the claim would be without merit if not waived.

Plaintiff did not assert a claim for anticipatory breach in the Original Complaint. After the parties closed on the contract, Plaintiff was granted leave to file the First Amended Complaint and, again, Plaintiff did not assert a claim for anticipatory breach. Thereafter, Defendants filed motions to dismiss and all of Plaintiff's breach of contract claims were dismissed upon, *inter alia,* findings that Seller did not breach the contract because Plaintiff purchased the property pursuant to the terms of the contract and the delay in the closing did not constitute a breach of contract. After all of its contract claims were dismissed, Plaintiff filed a Motion to Alter or Amend Judgment in which it attempted to assert, for the first time,

---

[8]Plaintiff, which is the appellant, did not expressly identify this as an "issue" in its brief. Tenn. R. App. P. 27(a)(4) expressly states that the brief of the appellant shall contain, under appropriate headings, "A statement of the issues presented for review." Plaintiff only identified two issues under the heading "Issues" in its brief. Accordingly, Plaintiff failed to comply with the rule; nevertheless, we elected to address the "non-issue."

a claim for anticipatory breach. The motion was denied. Additionally, Plaintiffs motion to file a second amended complaint was denied, and we found no error with the denial of the motions.

We acknowledge Plaintiff's contention that he is entitled to pursue a claim for anticipatory breach of contract due to the grant of a temporary injunction that prevented Seller from selling the property to another for a period of thirty days; however, we find no merit to this contention. The trial court did not, however, find Seller's conversations with other possible buyers actionable or evidence of any intention by Seller to avoid closing; instead, the court found the discussions were no more than a desire to have a "back up plan" in the event Plaintiff could not close. Thus, the trial court's ruling on the injunction does not support Plaintiff's phantom claim of anticipatory breach of contract.

The foregoing considered, we find no merit to this non-issue.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, William E. Kantz, Jr. Irrevocable Trust.


_____
FRANK G. CLEMENT, JR., JUDGE