## B. ADEN THOMPSON v. W. A. MENEFEE, et al.

Middle Section.    July 28, 1927.

No petition for Certiorari was filed.

1. **Injunction. The issuance of an injunction lies within the discretion of the Chancellor or trial judge.**

The power to grant injunction is entrusted by statute to all chancellors, circuit and special judges and there is no statutory provision controlling the exercise of the discretionary power but the discretion is a legal discretion and controlled by well settled rules. The exercise of this discretion is not subject to an appellate review, except in cases of manifest abuse of the discretion.

2. **Appeal and error. Moot question about the issuance of an injunction will not be reviewed on appeal.**

While pending the appeal the circumstances are changed to such an extent that the appeal involves merely a moot question, it will as a general rule be dismissed.

3. **Contracts. Whether a contract is breached because of failure to perform at time required depends on whether time is reasonable.**

Where after a contract had been signed by the parties, one of the parties gave notice that it must be performed at a day certain, held that whether or not the failure to perform on that day was a breach depended upon the reasonableness of the time given.

4. **Contracts. Ordinarily, time is not of the essence of the contract.**

Ordinarily time is not of the essence of the contract to convey lands, unless specifically made so by the contract, or inferred from the intention of the parties as set out in their contract.

5. **Contracts. Time may later be made the essence of a contract.**

Although time is not of the essence of a contract as originally made, it may be made such by subsequent conduct of the parties, as by one party giving notice that he will insist on the contract by a certain date, provided the time allowed is reasonable, which depends on the circumstances of the particular case.

6. **Contracts. Time given for performance of contract held unreasonable.**

Where a party gave fifteen days notice for the performance of a contract when at the time he knew that the other party must secure certain releases which would take longer than the time given, held that time did not become the essence of the contract so that there was a breach because the contract was not performed on the day named.

7. **Words and phrases. "Reasonable time" defined.**

Reasonable time in a contract is that time which the party obligated can with reasonable diligence, under the circumstances, do the thing required.

8. **Contracts. Party giving notice to perform contract in the future waives the prior breach.**

Where a party knowing the facts gave notice that the contract must be performed within a certain time, he waives all prior breaches as to time.

9. **Contracts. Evidence. Evidence held to show that contract was performed in a reasonable time.**

The evidence in the instant case set out and held that the plaintiff performed his contract with reasonable diligence and as soon as possible and there was no breach because of his failure to comply with the contract at the time named.

Appeal from Chancery Court, Davidson County; Hon. John R. Aust, Chancellor.

Affirmed.

Pitts & McConnico, of Nashville, for complainant Thompson.

Joseph C. Higgins, of St. Petersburg, Florida, for defendants Menefee.

CROWNOVER, J. This suit, as finally developed by the pleading, is one for the recovery of damages for breach of contract, a compromise agreement, dated March 1, 1922, in which it was undertaken to settle and adjust numerous suits and controversies then pending, and all differences between the parties to this suit.

The parties had dealt extensively with each other and had made many trade and conveyances of farming land, town lots, live stock, farm implements, and personalty, out of which had grown much litigation, and at the date of the compromise agreement there were in the courts of Alabama and Tennessee four suits involving property of considerable value.

The original bill in this cause was filed for a specific performance of another contract, and was later amended so as to sue for damages for breach of a warranty of title of some live stock conveyed by A. B. Menefee, but after the compromise agreement Thompson, filed an amended and supplemental bill against W. A. Menefee and A. B. Menefee seeking damages for breach of said compromise agreement in that they had failed to convey any of the property as contracted. The defendants denied any breach of the contract, and filed a cross-bill seeking a specific performance of the contract. At the hearing the Chancellor dismissed complainant's suit, except as to the value of one lot, and sustained the cross-bill.

The facts and the transactions necessary to be here noticed, are, that A. B. Menefee, the son of W. A. Menefee, on October, 22, 1918, traded certain live stock, horses, mules, cattle and farming implements, valued at $10, 525, free from encumbrances, all located on a farm in Marengo county, Alabama, to one B. F. Poole for eighty-six town lots, to be selected out of Moore's Subdivision in the City of Nashville, Tennessee, subject to a mortgage or vendor's lien of $1050. Poole shortly thereafter sold the live stock and implements to complainant Thompson, and a controversy arose between Thompson and A. B. Menefee as to whether certain property was included in the conveyance, so in order to settle the matter, Thompson traded two lots in Belmont Heights, in Nashville to A. B. Menefee for one Angus bull and three or four cows. It later developed that A. B. Menefee had previously mortgaged all these and other cattle to the New Orleans Cattle Loan Company for more than $26,000, and that company had later replevined these cattle from Thompson in the

circuit court of Marengo county, Alabama, and had disposed of them to other parties. However that replevin suit was later decided in favor of Thompson as will be hereinafter explained.

W. A. Menefee, after the cattle trade, obtained the title to said eighty-six Nashville lots, and on December 13, 1918 entered into a contract with Thompson, in which he agreed to convey said lots, to be selected out of the Moore Subdivision, to Thompson in consideration that Thompson release thirty-nine head of said cattle upon which the New Orleans Cattle Loan Company held said mortgages, which he failed to do, and Thompson filed the original bill in this cause for a specific performance. Defendant W. A. Menefee filed a demurrer and answer to said bill, in which he relied on the statute of frauds. Thereupon Thompson filed an amended bill in which he made A. B. Menefee and others defendants, and alleged that W. A. Menefee had obtained title to the said eighty-six lots and other lots, making 186 lots in the Moore Subdivision, and had agreed to convey said eighty-six lots, to be selected by Thompson, in consideration of the release of title to said thirty-nine cattle, and that all of said cattle, horses, mules, and stallion, of the value of $8925, had been replevined by the New Orleans Cattle Loan Company and disposed of by said company. He alleged fraud and conspiracy on the part of the Menefees, and prayed for damages, and attached Menefee's property located in Tennessee. This suit was pending, in this condition, when the compromise agreement was executed on March 1, 1922, and will be further referred to in this opinion.

A. B. Menefee owned a valuable farm of 1777 acres in Marengo county, Alabama, known as "Alfalfa Meadows," upon which he, on April 20, 1918 obtained a loan of $35,000 from the John Hancock Life Insurance Company and had executed a mortgage to mature on October 1, 1923, but the mortgage provided that in default of payment of interest annually the whole should become due and payable.

On October 23, 1918 A. B. Menefee sold and conveyed 516 acres of this farm to B. F. Poole in consideration of certain property situated in the town of Murfreesboro, Tennessee, and the assumption of $21,000 of said mortgage to the insurance company. Poole soon thereafter sold said 516 acres to Thompson, who also assumed the $21,000 of said mortgage.

On October 26, 1918 A. B. Menefee sold and conveyed 682 acres of said farm to W. J. Cathey, who assumed $7,000 of said insurance company mortgage.

On October 28, 1918 A. B. Menefee sold and conveyed 581 acres of said farm to Roth-Kirtland Realty Company, of Nashville, and it assumed $7,000 of said insurance company mortgage, and it later conveyed this tract to W. S. Little, who likewise assumed the $7000 of said mortgage.

A. B. Menefee covenanted with the grantees to have the said in-

surance company mortgage apportioned to the respective grantees and released accordingly, but the insurance company refused to apportion and release its security; hence A. B. Menefee on October 28, 1918, executed a mortgage on the 166 lots in the Moore Subdivision, which he then owned, to A. C. Miller, trustee, to secure the apportionment and release of the 581 acres sold to Roth-Kirtland Realty Company of the remainder of the insurance company mortgage above the $7,000 assumed.

The grantees defaulted in the payment of the interest to the insurance company and Thompson was forced to pay all the interest and taxes on the whole.

In December, 1919, W. A. Menefee purchased the $35,000 mortgage from the insurance company, and attempted to foreclose by declaring the whole mortgage due upon default of payment of interest, and through his attorney, Henry McDaniel, he advertised the farm of 1777 acres for sale, whereupon Thompson filed a bill in equity in the Federal court for the Southern District of Alabama, at Mobile, to enjoin the sale, alleging that he had tendered the interest on the whole mortgage to the insurance company before maturity, which had been declined by the insurance company as it had disposed of the mortgage to other parties; that he had made diligent search and inquiry but had been unable to ascertain who owned the mortgage until after the interest had matured, and that W. A. Menefee had concealed the fact of his purchase of the said mortgage until after the interest installment had matured for the fraudulent purpose of foreclosing the mortgage so as to deprive him of his property. And, among other things, he prayed for an injunction, and that the mortgage be apportioned as covenanted by A. B. Menefee. The court required Thompson to pay the interest on the whole mortgage and enjoined the sale. That suit was pending when said compromise agreement was made.

In the meantime, A. B. Menefee had filed a bill in equity in the circuit court of Marengo county, Alabama against Thompson and Poole, in which he sought a rescission and cancellation of the conveyances of the 716 acres to Poole and by Poole to Thompson, on the ground of imposition, fraud, misrepresentation and failure of consideration. This suit was pending when said compromise agreement was made.

The compromise agreement of March 1, 1922, after reciting the foregoing litigation and other controversies and claims for damages, stated that the parties had arrived at a settlement of said suits and all other controversies; and,

It was agreed that the Menefees would convey to Thompson the 166 lots in the Moore Subdivision and the two Belmont Heights lots in the City of Nashville, free from encumbrances created or suffered by either of the Menefees, and particularly free from the $2100 lien

or mortgage in existence when the property was conveyed to A. B. Menefee; and, they also agreed to deliver to Thompson a certain order held by A. B. Menefee on Wilkerson for the conveyance of the lot in Nashville, and they authorized Thompson to procure the conveyance of the lot to himself or to any other person. A. B. Menefee was to convey to Thompson by quitclaim deed eighty acres, known as the Drier tract in Alabama, and W. A. Menefee was to quitclaim to Thompson 240 acres in Alabama; and their wives were to join in the quitclaims to release dower in said tracts.

Upon the delivery of these deeds to Thompson, or his attorney, Judge Canterbury, Thompson was to satisfy the judgment in the New Orleans Cattle Loan Company case, and to release all his claims to the live stock and for damages that resulted from said suit.

A. B. Menefee was to dismiss his suit for rescission, and Thompson to dismiss his suit, enjoining foreclosure of the insurance company mortgage, Menefee agreed that the Alfalfa Meadow farm should be liable for only $21,000 of said mortgage and upon payment of that sum the property was to be released, and Thompson agreed to dismiss the present suit (this cause) and to turn over to Menefee a herd book and registration papers pertaining to the Angus cattle.

All of which was to be a settlement of all litigation and a release of all claims and demands held by the respective parties against the others.

This agreement was signed by Thompson, W. A. and A. B. Menefee, B. F. Poole and the New Orleans Cattle Loan Company.

The Menefees attempted to comply with the agreement by executing deeds conveying the property to Thompson in May, 1922, and sent them and the order on Wilkerson for the Nashville lot to Poole's attorney, Judge Cunningham, who had been active in bringing about the settlement. Judge Cunningham after making certain suggestions for the corrections of the deeds for the Alabama property, returned them to W. A. Menefee and after execution Menefee returned them to Judge Cunningham, who later delivered all of them to Judge Canterbury, one of Thompson's attorneys, and after keeping them sometime Judge Canterbury delivered the order for the Wilkerson lot to Thompson, and sent the deeds for the Tennessee property to Thompson's attorney, Mr. Jordan Stokes, Jr., at Nashville, sometime about the 1st of August, 1922. Upon inspection Mr. Stokes found that said deeds were not properly acknowledged, he conferred with Menefee's Tennessee attorney, Judge Higgins, and asked for an abstract of title. After pointing out the defective execution, Mr. Stokes delivered said deeds to Judge Higgins, who drafted proper deeds and returned them to Menefee for proper execution. In the meantime, Thompson had lost patience on account of the delay, and on October 9, 1922, he mailed registered letters to the Menefees, B. F. Poole, and the New Orleans Cattle Loan Company, giving

notice that the contract must be complied with in fifteen days.  The notice is as follows:

"October 9, 1922.  You, and each of you, this letter being sent by registered mail to each of you separately, are hereby notified that the agreement heretofore entered into on March 1, 1922 has not been carried out by you, and that although I have insisted upon you carrying out this agreement so entered into with me, you have utterly failed and neglected so to do; and your failure to carry out this agreement has resulted in very serious loss and damage to me, as immediately after the execution of the agreement, I made arrangements to dispose of the 166 lots located in Nashville, Davidson county, Tennessee, which arrangements I could have carried through had you carried out your agreement with me.  It is now impossible for me to carry out the arrangements I had made to handle these lots thus resulting in serious losses, for which, of course, I shall expect you to recompense me.

"As stated I have waited patiently upon you to carry out your part of this agreement, and have stood ready and willing at all times to carry out my part of the agreement.  And this is to notify you that unless you carry out this agreement on or before fifteen (15) days from this date, that I will consider the agreement as at an end, and will proceed against you and hold you responsible for any and all damages which you have occasioned me, which, as you know, are considerable"  This notice was signed by Thompson.

The deeds for the Tennessee property were again delivered to Mr. Jordan Stokes, Jr., on October 24, 1922.  The deed for the 166 lots in Nashville was formally executed, but the deed conveying the two Belmont Heights lots in Nashville was not properly acknowledged, as it had been acknowledged on May 22, 1922 before a Justice of the Peace in Alabama and the certificate of acknowledgment was defective.  Later, on November 24, 1922 it was again acknowledged before a justice of the peace in Alabama, who used a Tennessee form certificate.  It was returned by Judge Higgins to the Menefees, who on December 1, 1922 properly acknowledged it before a notary public.

Thompson declined to receive any of the deeds for the reasons that they were not properly executed and tendered before the expiration of the time set in the notice, free from encumbrances, as contracted, and because the Menefees had no title to the Alabama property or the Wilkerson lot when the compromise was made, which facts were alleged to have been misrepresented and fraudulently concealed and withheld from him.

On April 6, 1923, Thompson filed an amended and supplemental bill in this cause against W. A. and A. B. Menefee, in which he reviewed the history of the controversies, and sought damages for a breach of the compromise agreement, and alleged a breach of the contract in the following respects:

(a) Because W. A. Menefee had failed to convey the 166 Nashville lots as contracted, and he alleged that the deed was not accepted because the Miller mortgage of $7000 was not released, and because other parts of the contract were not complied with.

(b) Because W. A. Menefee had failed to convey the two Belmont Heights lots as contracted and he alleged that the deed was declined because not properly executed in accordance with the contract.

(c) Because the Wilkerson lot in Nashville had been sold and conveyed by him to other parties, with defendants' consent three months before the compromise was made, of which he had no knowledge.

(d) Because the defendant W. A. Menefee had no title to the 240-acre tract in Alabama, as it had been sold under a mortgage and redemption had expired sometime before the compromise agreement was made, and A. B. Menefee had no title to the eighty-acre Drier tract in Alabama, which facts were known to the defendants, and they had falsely and fraudulently represented, at the time, that they owned said two tracks of land.

(e) Because W. A. Menefee had failed to release the Alfalfa Meadows farm of the $35,000 mortgage to $21,000 as contracted, before the expiration of the time to comply fixed in the notice.

(f) Because W. A. Menefee, who had become the owner of the $35,000 mortgage had fraudulently colluded with and permitted the purchasers of the remainder of the Alfalfa Meadows farm to cut and remove its timber, which greatly impaired complainant's right of contribution against them for the interest and taxes, amounting to $5000, paid by complainant.

Complainant alleged his ability, readiness and willingness at all times to comply with his part of the contract upon compliance by the defendants, and he prayed for damages, which he alleged to be more than $40,000 for the breach of said compromise agreement, and asked for an injunction inhibiting defendant W. A. Menefee from foreclosing or assigning the $35,000 mortgage.

The defendants filed a long answer going into details about the several transactions, in which they admitted the compromise agreement and most of the transactions alleged, but they denied that they had breached the contract. They alleged a tender of the deeds and a substantial compliance with the contract. They insisted that Thompson's attorneys had held the deeds until August without com-

plaint and he was therefore estopped; that they thought that they had complied with their part of the contract, and that his attorney had agreed that the interest should not be collected on the insurance company mortgage pending the execution of the deeds, hence complainant is estopped. That complainant's attorney thereafter demanded an abstract of title which delayed compliance with the contract, and that the time set for compliance in the notice was not reasonable. They denied all fraud, collusion and concealment of facts about the title of the Alabama tracts, and knowledge of the sale of the Wilkerson lot, and alleged that complainant knew all about the title; but, as the Wilkerson lot had been sold, they offered to pay its value.

On June 20, 1924 they filed an amended answer as a cross-bill, in which they reviewed the facts in more detail, alleged performance of the contract, on their part, but denied that complainant had complied with his part of the contract, in that he had failed to dismiss the suits and to satisfy the Alabama judgment in the New Orleans Cattle Loan Company lawsuit and had failed to deliver the herd book, and they prayed for a specific performance of the contract.

Complainant and cross-defendant answered the cross-bill relying upon the facts alleged in his amended and supplemental bill and denied that the Menefees were entitled to a specific performance as they had breached the contract.

The complainant moved for an injunction in accordance with the prayer of the bill, but the Chancellor while stating that the amended and supplemental bill, on its face, abundantly showed a meritorious case for an injunction, he denied the motion because the defendants were nonresidents of the State of Tennessee, and for this reason the court had no power to enforce an injunction if granted.

Considerable proof was taken and read at the hearing to the Chancellor, who was of the opinion that the fifteen days notice for compliance with the contract was unreasonable, and that complainant's suit should be dismissed, except that he decreed that defendants were liable for the value of the Wilkerson lot. He referred the matter to the master to ascertain its value. He also sustained defendants' cross-bill and ordered a specific performance of the contract. The complainant appealed and he has assigned errors which when summarized are as follows:

I.   The Chancellor erred in refusing to grant the injunction.

II.  The Chancellor erred in dismissing the bill and in refusing complainant the relief sought:

    (1)  Because the contract was entire and independent on the part of complainant.

(2)   Because the defendants failed to comply with the contract, by releasing the incumbrances and by making the conveyances as contracted.

(3)   Because complainant cannot be compelled to accept compliance in part and compensation for the remainder, since he had declared the contract at an end on account of existing breaches. .

(4)   Because the contract was positive and contemplated performance at once, and entitled complainant to a performance within a reasonable time without formal demand. Complainant gave notice, on October 9, 1922, in which he demanded compliance within fifteen days, which was a reasonable time, and defendants failed to comply.

(5)   There is no evidence to support the decree, as the deeds were not delivered to complainant, in compliance with the contract, prior to the expiration of the notice, and none accepted by him as none of the incumbrances created by defendants were removed until long after the expiration of the time fixed by the notice.

(6)   Because the evidence shows that defendants were guilty of bad faith in the negotiation of the compromise agreement by proposing to convey by quitclaim the 240-acre tract, in that, they concealed from complainant and suppressed the facts that they had no right, title or interest in said 240 acres, and that it had been sold under mortgage and the right of redemption had expired.

III.   The Chancellor erred in failing to decree that complainant was entitled to recover damages for breach of contract and in failing to order a reference to fix the damages.

We do not think that the first assignment of error is well made for several reasons, because our decision on this question at this time cannot affect the result in any way, and the assignment therefore raises only a moot question. See State, ex rel. v. Bush, 141 Tenn., 229, 208 S. W., 607. In the view we take of the whole case the granting of a fiat for an injunction could not have helped the complainant, and therefore the assignment raises an immaterial proposition. It was a matter within the discretion of the Chancellor, and we do not think his discretion was abused, as complainant had another suit pending in the Federal court at Mobile against these defendants, where he had obtained an injunction for the same purpose, and that suit was still pending and injunction in force at the time.

By statute, Shannon's Code, sec. 5750 and 6246, the power to grant injunctions is entrusted to all our Chancellors, Circuit and Special Judges, interchangeably; and there is no statutory provision controlling the exercise of the discretionary powers thus entrusted to all

our Chancellors and judges; but the discretion is a legal discretion controlled by well-settled rules, (Railroad v. Huggins, 7 Cold., 226), and is subject, under Shannon's Code, secs. 6253 and 6267, to the supervising control of the Chancellor of the court in which the suit is pending. See Flippin v. Knaffle, 2 Cooper's Tenn. Chy., 243-244.

Generally, the exercise of discretionary authority by trial courts is not subject to appellate review, except in cases of manifest abuse of the discretion. See 2 Standard Ency. Procedure, 449-541. It results that this assignment of error must be overruled.

The errors complained of in the second assignment are in substance that the Chancellor erred in dismissing the bill and in refusing complainant the relief sought, because the compromise agreement was an entire contract and the Menefees' covenants were independent, that time was made the essence of the contract by service of the notice, and that the time fixed in the notice (fifteen days) was reasonable, that the Menefees failed to execute and deliver valid deeds conveying the property free of the encumbrances before the expiration of the time fixed in the notice, therefore the contract being entire and indivisible, the failure by the Menefees to comply with any part resulted in their breach of the contract, and complainant cannot be compelled to accept compliance in part and compensation for the remainder.

The specific breaches of the contract relied on by appellant in this assignment of error is that the defendants failed to convey the 166 lots in Nashville, free of encumbrance, as contracted, within the time fixed in the notice, in that the lots were encumbered by a $7,000 mortgage to A. C. Miller, trustee, and a $2100 mortgage to S. F. Morrow, trustee, and because the other parts of the contract were not complied with; that they failed to deliver the deed for the two Belmont Height lots within the time fixed in the notice, in that the deed attempted to be delivered was defectively acknowledged; that they failed to deliver the order on Wilkerson for the Nashville lot as contracted, and because the lot had been sold by Wilkerson to another, with defendants' consent, three months prior to the contract, of which sale complainant had no knowledge; and that they failed to convey the Driar 80 acres and 240-acre tracts in Marengo county, Alabama, as they had no title to the tracts and fraudulently concealed from complainant and suppressed the fact that they had no title or interest in said 240 acres and that it had been sold under mortgage and the right of redemption had expired long before the making of the compromise agreement; and they failed to release the $35,000 mortgage on Alfalfa Meadows farm to $21,000, as contracted before the expiration of the time fixed in the notice.

The proposition that the Menefees breached the contract depends upon whether the time fixed in the notice was reasonable, and whether

time was of the essence of the contract. After an examination of the record, we are of the opinion that the time fixed in the notice for the compliance with the contract was not reasonable. Complainant knew all about the encumbrances on the property and the trouble that the defendants were having in removing them when he gave the notice. He evidently knew Roth's attitude towards Menefee, as he testified that Roth had said that he would see Menefee in hell before he would release the mortgage without pay. His attorney had recently demanded an abstract of title, although it was not provided for in the contract, and the completion of the abstract was delayed because the abstractor was sick. Menefees' Tennessee attorney, Judge Higgins was sick and had to go away to Hot Springs before the time fixed in the notice had expired. All these incidents caused delays.

It is insisted by complainant that Menefee could have released the encumbrances on the property within an hour or two, or in any event could have released them within the fifteen days, as he owned the $35,000 mortgage, and had paid off the S. F. Morrow mortgage before the compromise. We do not assent to the proposition that Menefee could have released of record the Miller mortgage by releasing the $35,000 mortgage on th Alfalfa Meadows plantation. If Menefee had released the $35,000 mortgage to $21,000, that would not have released of record the A. C. Miller $7000 mortgage in favor of Roth-Kirtland Realty Company. He offered to release the $35,000 mortgage to $21,000 and offered to make a bond to the Roth-Kirtland Realty Company if it would release the $7000 mortgage, but that company declined to accept the bond and declined to release the mortgage unless paid to do so. Menefee's attorney threatened to bring suit and Menefee was finally forced to pay $500 'expenses for the release.'' Taking all of these things into consideration, we do not think that fifteen days for compliance with the contract was a reasonable time under the circumstance.

Ordinarily time is not of the essence of the contract to convey lands, unless specifically made so by the contract, or inferred from the intention of the parties as set out in their contract. See 39 Cyc., 1337-1341; Pomeroy, Specific Performance, 3d Ed., sec. 395.

Although time is not of the essence of a contract as originally made, it may be made such by subsequent conduct of the parties, as by one party giving notice that he will insist on the contract by a certain date, provided the time allowed is reasonable, which depends on the circumstances of the particular case. 39 Cyc., 1332, 1333, 1341; 13 C. J., 483, 688; Farris v. Ferguson, 146 Tenn., 498, 503; 242 S. W., 873; Pomeroy on Specific Performance, 3d Ed., sec. 396.

Reasonable time in a contract like this, is that time within which the party obligated can with reasonable diligence, under the circumstance, do the thing required.

Where a party knowing the facts gives notice that the contract must be performed within a certain time, he waives the prior breach; hence the question of whether the Menefees could have complied with the contract before the notice was given become immaterial. See Pomeroy Eq. Jur., 4th Ed., Vol. 5, sec. 2235.

It results that the questions whether the contract was entire and indivisible, and that the covenants on the part of the Menefees were independent, becomes immaterial where the time fixed in the notice was not reasonable, as the complainant broke off further negotiations with the defendants after October 24, 1922.

After an examination of the record we are of the opinion that the defendants complied with the contract within a reasonable time after the notice was given. Menefee finally by paying the Roth-Klirtland Realty Company $500 obtained a release of the $7000 Miller mortgage on July 3, 1923. Menefee had paid off the $2100 mortgage to S. F. Morrow on September 15, 1918, and it was released on November 27, 1922, and the formal deed to the 166 lots in Nashville was delivered to Mr. Stokes on October 24, 1922.

The deed to the two Belmont Heights lots was executed in May, 1922 but the acknowledgment was defective, when tendered to Mr. Stokes on October 24, 1922. It had to be reacknowledged and finally a correct deed was acknowledged on December 1, 1922. There were no encumbrances on these lots.

We do not think that there is any merit in the contention about the Alabama property.

With respect to the eighty-acre tract, it appears that Poole had a contract with one Drier, who owned this tract, whereby he agreed to convey it to Poole or his assignee. Later Poole transferred this order to A. B. Menefee, and in the compromise agreement Menefee agreed to quitclaim the tract to Thompson. There is no fraud shown in connection with the conveyance of this tract. Poole later agreed with Thompson to give him credit on his mortgage for the tract if he would carry out the compromise agreement.

Appellant insists that the defendants were guilty of bad faith in the negotiation of the compromise agreement by proposing to convey by quitclaim the 240-acre tract, in that, they concealed from complainant and suppressed the fact that the right of redemption had expired. The bill alleges that Menefee misrepresented the title, but there is no proof that Menefee made any misrepresentations of any kind. The proof shows that the mortgage had been foreclosed and that the property was brought in by the Richland Farms Company, which was controlled by B. F. Poole. Poole stated that when the compromise agreement was drafted the equity of redemption had expired, but he would agree to let the land be redeemed for the amount of the mortgage and interest and that should not stand in

the way of a compromise. Poole and Thompson slept in the same room and discussed the compromise before Thompson signed it, and evidently Thompson knew more about the expiration of the time of the redemption than he admits. Hence, we do not think that Menefee was guilty of any wrong in any manner. In the absence of misrepresentations it was the duty of Thompson and his attorneys to investigate and to ascertain what title they were getting, especially when the deed was to be only a quitclaim.

It is contended that W. A. Menefee breached the contract by failing to release the $35,000 mortgage on the Alfalfa Meadows farm to $21,-000 as agreed. The contract states that Menefee agreed that "Alfalfa Meadows shall only be responsible for the principal sum of $21,000 of the mortgage on the plantation in favor of the John Hancock Mutual Life Insurance Company, and that upon the payment of said sum, together with the interest thereon, according to the terms of said mortgage, the said mortgage shall be released so far as said Alfalfa Meadows plantation is concerned." In other words, this was not to be released of record until paid. However, during the negotiation Mr. J. F. Thompson, attorney for Menefee wrote Mr. Stokes that his client was willing to enter a release satisfactory to him, and Mr. Stokes suggested to Judge Higgins that the release be made in an order to be entered in the Federal court case at Mobile, and this was contemplated when the notice was given. The $21,000 has never been paid and it was not incumbent on Menefee to release the mortgage until paid.

It is insisted that Menefee failed to deliver an order on Wilkerson for the lot in Nashville as contracted, and that Wilkerson had sold the lot to another with defendants' knowledge three months prior to the contract. The proof shows that this is a small lot of little value and evidently was not an inducement to the purchase. The agreement provided that W. A. Menefee would deliver to Thompson the order for the conveyance of this lot, and that A. B. Menefee released any claim that he had to the property, and authorized Thompson to procure the conveyance to himself or his assignee. It appears that this lot had been sold by Wilkerson to some other person, and it was contended by Wilkerson that he had an agreement with Poole that he might pay him $150, the value of the lot. There is no proof that Menefee knew anything about the side agreement between Poole (who formerly owned the order) and Wilkerson, and the evidence does not show that the Menefees withheld any knowledge they had from Thompson. The order was delivered by Judge Canterbury to Thompson and seems to have been lost, hence, under the circumstances, we think that the contract had been complied with in this respect, but as Menefee's attorney upon learning that the lot had been sold, agreed that Menefee would pay Thompson

the value of the lot, we think the Chancellor was correct in referring the matter to the master to ascertain upon proof and report its value.

It results that the second assignment of error must be overruled.

We think that the third assignment should be overruled for the same reasons.

It is insisted that the Menefees are not entitled to specific performance because they were guilty of bad faith in concealing and failing to disclose to Thompson the fact that the equity of redemption on the 240-acre tract had expired and that they had no shadow of a claim to it, therefore they have not come into court with clean hands. As before stated, we do not think they were guilty of any bad faith, hence there is nothing in this proposition. The Menefees having complied with the contract are entitled to specific performance.

It results that all the assignments of error must be overruled, the decree of the Chancellor affirmed, and the cause is remanded to the chancery court of Davidson county for the purpose of ascertaining the value of the Wilkerson lot as decreed by the Chancellor. The cost of the appeal, and one-half of the cost of the cause to date is adjudged against appellant and the surety on his prosecution bond. The cost of the appeal is also adjudged against surety on appeal bond. And the other half of the cost of the cause accrued to date is decreed against appellees and the sureties on the prosecution bond of the cross-bill. Executions will issue accordingly.

Faw, P. J. and DeWitt, J., concur.