IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 17, 2023 Session

## MATTHEW SWILLEY ET AL. V. WILLIAM THOMAS ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 21-0437     Pamela A. Fleenor, Chancellor**

———————————————————

**No. E2022-01801-COA-R3-CV**

———————————————————

Appellants Matthew Swilley ("Swilley") and Samuel Barr ("Barr") entered into two agreements to purchase mobile home parks from William Thomas ("Thomas"). The buyers had not secured financing in order to close on the originally agreed upon closing date. The seller granted the buyers a number of extensions of the closing date; however, the buyers were ultimately unable to obtain financing in time to close by any of the dates demanded by the seller. As a result, the seller rescinded the agreements and shortly thereafter sold the properties to unrelated third parties for a higher price than provided for in the agreements with Swilley and Barr. Swilley, Barr, and their purported assignee, SB Capital LLC ("SB Capital" or, together with Swilley and Barr, "Plaintiffs"), brought suit against the seller for breach of contract and for a declaratory judgment as to the proper disbursement of the earnest monies held in escrow. The trial court granted summary judgment in favor of the seller on Plaintiffs' breach of contract claim, finding that Plaintiffs were the first to materially breach the agreements. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Matthew A. Grossman and Richard E. Graves, Knoxville, Tennessee, for the appellants, Matthew Swilley, Samuel Barr, and SB Capital, LLC.

Robert G. Norred, Jr., Cleveland, Tennessee, for the appellee, William Thomas.

# OPINION

## I. Background[1]

On January 19, 2021, "Samuel Barr & Matthew Swilley and/or as assigned," collectively as Buyer, and Thomas, as Seller, entered into two Real Estate Purchase Agreements (the "Purchase Agreements") for the purchase and sale of two mobile home parks, one located in Hamilton County (the "Hamilton County Park") and another located in Bradley County (the "Bradley County Park" or, together with the Hamilton County Park, the "Parks"). On January 22, 2021, Swilley & Barr deposited $1,000 per Purchase Agreement ($2,000 total) as earnest money in escrow with Foothills Title Services, Inc. ("Foothills Title"). Each Purchase Agreement provided that Thomas would deliver the relevant property free and clear of any liens, debts, or encumbrances to Buyer. The closing of each transaction was contingent upon Buyer "obtaining suitable financing" and contingent upon the closing of the other transaction. Each Purchase Agreement provided for a closing date of March 5, 2021 and required that "[a]ny extension of this date and time must be agreed in writing by Buyer and Seller[;]" however, the Purchase Agreements did not state that time was of the essence.

Swilley and Barr were not able to close by March 5, 2021 because they had not secured financing for the transactions. Thomas agreed to extend the closing date to March 29. In exchange for this extension, Swilley and Barr deposited additional earnest money of $4,000 per Purchase Agreement ($8,000 total) in escrow with Foothills Title. Swilley and Barr still had not secured financing by March 27, so on that date, they and Thomas executed "Amendment No. 1" with respect to each Purchase Agreement. Each Amendment extended the closing date for the transactions to April 30, 2021. In exchange, Swilley and Barr paid directly to Thomas additional earnest money of $2,500 per Purchase Agreement ($5,000 total).

On March 30, 2021, Barr executed an "Assignment to Purchase Real Estate," (the "Assignment") which purported to transfer to SB Capital all of Swilley's and Barr's "equitable interest" in the Parks. In addition to executing the Assignment in his individual capacity as Assignor, Barr also executed the Assignment in his purported capacity as Manager of SB Capital as Assignee. Barr executed the Assignment with the consent and permission of Swilley, though Swilley did not execute the Assignment himself. SB Capital gave no consideration to Swilley or Barr for the Assignment and several provisions of the Assignment were apparently included by mistake. There is no dispute among SB Capital, Swilley, and Barr that SB Capital held the rights of "Buyer" under the Purchase

---

[1] Except as otherwise noted, these facts are taken from the Agreed Stipulation of Facts and exhibits thereto filed by the parties in the trial court.

Agreements after the execution of the Assignment; however, Thomas disputes this assertion.

Though not mentioned in the Agreed Stipulation of Facts filed by the parties nor in the parties' briefs to this Court, both Thomas's Statement of Undisputed Material Facts and Plaintiffs' response thereto reflect that on April 6, 2021, the following text message exchange occurred between Thomas and Swilley:

> Thomas: I got 3 calls today from people wanting these properties.
> Swilley: We will close
> **Thomas: No more extensions**
> Swilley: I got you don't worry

(Emphasis added). In a subsequent text message exchange on April 26, 2021, Swilley again stated that they were prepared to close the transactions that week. However, they did not close. Instead, on April 29, 2021 at approximately 6:30 p.m., Swilley emailed Thomas, with a copy to Barr, to notify him that Swilley and Barr were "elect[ing] to exercise the option to extend [the Purchase Agreements] 15 days as provided in section 9c of [the Purchase Agreements]." Specifically, Paragraph 9(C) of the Purchase Agreements provided:

> In the event that any Third-Party Reports are required by Buyer or Buyer's lender, and these Third-Party Reports are not completed during [the] initial Forty-Five (45) day inspection period [following the Effective Date of the Purchase Agreements[2]], the inspection period may be extended for an additional Fifteen (15) day period at Buyer's option if Buyer deposits an additional $4,000 non-refundable Deposit with [Foothills Title].

Swilley stated that this extension was necessary because "[o]ur lender . . . requires additional time to complete the appraisal" and notified Thomas that an additional $4,000 per Purchase Agreement ($8,000 total) had been deposited with Foothills Title "as required by [the Purchase Agreements]."

Thomas responded at 11:13 p.m. on April 29, 2021, and notified Swilley and Barr that he would declare them in default of the Purchase Agreements if they did not close on or before April 30, 2021. Thomas referenced the language of Paragraph 9(C) regarding an extension of the initial forty-five-day inspection period and maintained that he was "under no obligation whatsoever to grant a 3rd extension under the terms of [the Purchase Agreements]." Thomas was unwilling to close on the Purchase Agreements at any time after April 30, 2021.

---

[2] It is undisputed that the Effective Date of the Purchase Agreements was January 19, 2021.

On May 25, 2021, counsel for Thomas wrote to counsel for Swilley and Barr notifying them that the Purchase Agreements were terminated and that Thomas had requested that Foothills Title disburse the $18,000 in earnest money to him. On May 27, Swilley and Barr, through counsel, made a written demand that Thomas close on the Purchase Agreements on June 4, 2021. Thomas maintained that the Purchase Agreements had been terminated and refused to close on June 4.

On June 18, 2021, two weeks after the demanded June 4 closing date, Plaintiffs filed a Complaint against Thomas and Foothills Title in the Chancery Court for Hamilton County (the "trial court"). Plaintiffs sought damages against Thomas for breach of contract and a declaratory judgment that Plaintiffs were entitled to a return of the full $18,000 in earnest money held by Foothills Title. Thomas answered the Complaint, asserted various affirmative defenses, and filed a counterclaim against Plaintiffs for breach of contract and a crossclaim against Foothills Title demanding that the earnest money instead be disbursed to him.

Plaintiffs' Complaint referenced, for the first time, an Affidavit and Memorandum of Purchase and Sale Agreement (the "Bailey Capital Affidavit") that was filed with the Register's Office of Hamilton County, Tennessee, in October 2020, approximately three months prior to the execution of the Purchase Agreements. The Bailey Capital Affidavit stated that Thomas and an unrelated third party, Bailey Capital LLC ("Bailey Capital"), had entered into an agreement for the sale of the Hamilton County Park to Bailey Capital. The Bailey Capital Affidavit stated that, as a result, Bailey Capital had "the exclusive right to the purchase" and "an equitable interest in" the Hamilton County Park. A release of the Bailey Capital Affidavit was recorded on June 15, 2021, three days before Plaintiffs filed their Complaint but eleven days after their demanded June 4 closing date.

Thomas sold the Bradley County Park to an unrelated purchaser in September 2021, for $25,000 more than the purchase price provided in the relevant Purchase Agreement and sold the Hamilton County Park to an unrelated purchaser in March 2022, for $115,000 more than the purchase price provided for in the relevant Purchase Agreement.

On June 23, 2022, Thomas moved for summary judgment as to Plaintiffs' breach of contract claim. Thomas argued that Swilley and Barr have no individual cause of action against him due to their purported assignment to SB Capital of their rights under the Purchase Agreements and that SB Capital "is not a proper party plaintiff" because the Assignment "is an illusory and unenforceable document because the assignment is not supported by consideration and SB Capital has no quantifiable damages." He also argued that Plaintiffs' claimed damages "for future value of the subject real estate and income . . . is not the proper measure of damages and . . . SB Capital failed to present any quantifiable claim for damage[s] . . . other than a bonus depreciation tax write off which has to be supported by expert testimony which is not present." Finally, Thomas argued that the

Purchase Agreements were not enforceable as they had lapsed as of April 30, 2021 and, alternatively, that Plaintiffs did not deposit any additional earnest money to extend any closing after May 15, 2021.[3]

In response, Plaintiffs argued that Thomas lacks standing to contest the validity or effect of the Assignment to which he is not a party. They argued that the intent of Plaintiffs, as the parties to the Assignment, controls with regard to the Assignment, and that it is undisputed among Plaintiffs that Swilley and Barr effectively assigned to SB Capital their right to enforce the Purchase Agreements. Alternatively, they argued that, in the event such right was not effectively assigned to SB Capital, Swilley and Barr retain the right to enforce the Purchase Agreements, and they are proper party plaintiffs. Next, Plaintiffs argued that their failure to close by April 30, 2021 did not result in the Purchase Agreements lapsing because the Purchase Agreements did not make time of the essence. Additionally, Plaintiffs argued that they were never under an obligation to close because Thomas could not satisfy his obligations under the Purchase Agreements. Specifically, Plaintiffs argued that, until it was released, the Bailey Capital Affidavit "precluded [] Thomas from delivering marketable title to Plaintiffs[.]" Finally, Plaintiffs argued that there is "substantial and material evidence" that they sustained damages in the amount of $140,000.00, equal to the difference between their total purchase price under the Purchase Agreements and the total sales price Thomas ultimately received for his sale of the Parks to third parties later in 2021. In support of their argument that Thomas was unable to deliver marketable title, Plaintiffs attached a Declaration of Eugene R. McCullough, Esq., NTP, TNLTP, CIPP/US (the "McCullough Declaration"). Mr. McCullough is a licensed Tennessee attorney with over twenty years of employment with various title insurers. He opined that, as a result of the Bailey Capital Affidavit: equitable title to the Hamilton County Park had been transferred from Thomas to Bailey Capital, and any legal title previously held by Thomas would be deemed to be held exclusively in trust for the benefit of Bailey Capital; equitable legal title remained in Bailey Capital from the time the purchase agreement between Thomas and Bailey Capital was executed until June 14, 2021; title to the Hamilton County Park would be deemed unmarketable if sold to a buyer other than Bailey Capital and would subject the parties to such sale to a threat of litigation; any reasonably prudent title insurer would refuse to issue title insurance for the Hamilton County Park to any purchaser other than Bailey Capital so long as the equitable title was deemed to be vested in Bailey Capital; and any reasonably prudent real estate attorney and/or title insurer would conclude that Thomas never possessed marketable title that he was obligated to convey under the Purchase Agreements.

The trial court granted summary judgment in favor of Thomas on August 24, 2022, finding that the first antecedent breach of the Purchase Agreements was by Plaintiffs due

---

[3] May 14, 2021 is the date to which Plaintiffs attempted to extend the closing in their April 29, 2021 correspondence to Thomas.

to their failure to close by April 30, 2021 and that the Purchase Agreements expired thereafter. The trial court did not consider the Bailey Capital Affidavit because the copy filed with the trial court was not properly authenticated, although Plaintiffs had asked the trial court to take judicial notice of the document and Thomas had no objection. The trial court further found that, even if it had considered the Bailey Capital Affidavit, the issue of Thomas's purportedly unmarketable title was "a phantom argument since Plaintiffs never brought any potential cloud of title to [Thomas's] attention at any of the times material," and the issue of Thomas allegedly being the first to breach "was not raised in the Plaintiffs' Complaint or any of the pleadings prior to Plaintiffs' response to [Thomas's] Motion for Summary Judgment." Moreover, the trial court held that Plaintiffs could not raise this argument because the closing was not prevented by the alleged cloud on the title but instead by Plaintiffs having not yet secured financing. The trial court found that time was not of the essence in this case because it was not written into the Purchase Agreements but that this argument by the Plaintiffs was inapplicable because they breached by failing to close by April 30, 2021. Finally, the trial court held that the Purchase Agreements were not effectively assigned to SB Capital by Swilley and Barr, and thus SB Capital is not a proper party plaintiff. Because the trial court found that Thomas was entitled to summary judgment as a matter of law, it made no ruling on Plaintiffs' alleged damages.

On November 4, 2022, a bench trial was held on the parties' opposing claims for disbursement of the earnest money. In their opening statement at trial, Plaintiffs acknowledged that the only way they could prevail on their remaining claim for disbursement would be for the trial court to make a ruling inconsistent with the summary judgment order. Plaintiffs then argued that there were a number of issues with the summary judgment order, namely those issues raised on appeal and discussed below. Plaintiffs argued that the trial court had the authority to modify the summary judgment order as it was not yet a final order. Thomas objected to this opening statement as an attempt to reargue the summary judgment motion. At the conclusion of opening statements, the trial court stated that it construed Plaintiffs' opening statement as a motion to alter or amend the summary judgment order and held it was not timely because Plaintiffs did not file a motion pursuant to Rules 59 or 60 of the Tennessee Rules of Civil Procedure within thirty days after the entry of the summary judgment order. As such, the trial court declined to alter or amend the summary judgment order. At the conclusion of trial, the trial court awarded Thomas $10,000 of the earnest money and Swilley and Barr $8,000 of the earnest money. This timely appeal followed.

## II. Issues Presented on Appeal

Plaintiffs raise the following issues on appeal, which we restate and consolidate:

1.      Whether the trial court erred in granting Thomas's motion for summary judgment as to Plaintiffs' breach of contract claim.

2.      Whether the trial court erred in holding there was no effective assignment of the Purchase Agreements to SB Capital.

3.      Whether Plaintiffs were damaged by Thomas's purported breach of the Purchase Agreements.

4.      Whether the trial court's purported errors in the summary judgment order require reversal of the subsequently entered judgment.

5.      Whether the trial court erred in holding that the summary judgment order became a final order prior to the entry of the judgment.

### III. Standard of Review

A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court has instructed,

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, "to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, set forth specific facts . . . showing

that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks and brackets in original omitted). "Whether the nonmoving party is a plaintiff or a defendant – and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense – at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects*, 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265).

"This court will affirm the trial court's summary judgment if it finds that the trial court reached the correct result, 'irrespective of the reasons stated.'" *Wood v. Parker*, 901 S.W.2d 374, 378 (Tenn. Ct. App. 1995) (quoting *Clark v. Metro. Gov't of Nashville & Davidson Cnty.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991)).

Like motions made pursuant to Rules 59 and 60 of the Tennessee Rules of Civil Procedure, motions made pursuant to Rule 54.02 are reviewed under an abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). "Indeed, when reviewing a discretionary decision by the trial court, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *Id.* (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

## IV. Analysis

### A. Motion for Summary Judgment

Plaintiffs argue that the trial court erred in granting Thomas's motion for summary judgment because (1) the Purchase Agreements did not make time of the essence, and (2) Thomas was not able to deliver marketable title on April 30, 2021. Plaintiffs contend they were damaged by Thomas's refusal to close on a later date.

"[A] party who commits the first uncured material breach of contract may not recover damages for the other party's material breach." *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 812 (Tenn. Ct. App. 2009) (citing *United Brake Sys., Inc. v. Am. Env't Prot., Inc.*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997)). In their Complaint, Plaintiffs aver that Thomas breached the Purchase Agreements "**first** by failing to obtain and provide Buyers or SB Capital LLC with necessary information and

documentation to effect a release of record lines [*sic*], debts, and encumbrances, and **second** by failing to close on June 4, 2021." Conversely, Thomas argues in his motion for summary judgment that he was entitled to terminate the Purchase Agreements when Plaintiffs were not ready to close on April 30, 2021, or alternatively May 14, 2021.

*i.*

"Ordinarily, the inability of a party to close a real estate sales contract on a particular date is not considered to be a material breach of the contract since the general rule is that time is not of the essence in a real estate sales contract, unless otherwise specified in the contract." *Lewis v. Muchmore*, 26 S.W.3d 632, 639 (Tenn. Ct. App. 2000) (quoting *Crye-Leike Realtors, Inc. v. Hay*, No. 02A01-9104-CV-00057, 1991 WL 192493, at *3 (Tenn. Ct. App. Oct. 1, 1991)). However, even when a real estate sale contract does not expressly make time of the essence, "it may be made such by subsequent conduct of the parties, as by one party giving notice that he will insist on the contract by a certain date, provided the time allowed is reasonable, which depends on the circumstances of the particular case." *Thompson v. Menefee*, 6 Tenn. App. 118, 128 (Tenn. Ct. App. 1927). Reasonable time "is that time within which the party obligated can with reasonable diligence, under the circumstance, do the thing required." *Id.* "When time is of the essence, the failure of a party to [timely perform] gives the other party a basis to rescind the contract." *Seaton v. Wise Properties-TN, LLC*, No. E2011-01728-COA-R3-CV, 2012 WL 2362144, at *6 (Tenn. Ct. App. June 22, 2012) (citing 77 Am.Jur.2d *Vendor and Purchaser* § 80 (1975); 91 C.J.S. *Vendor & Purchaser* § 104b (1955)).

The Purchase Agreements did not expressly provide that time was of the essence. However, Thomas made time of the essence when he demanded that Plaintiffs close on or before April 30, 2021. Plaintiffs argue that this demand was not reasonable because it was made on April 29, 2021; however, this argument ignores the fact that Thomas expressly informed Swilley on April 6, 2021 – twenty-four days prior to April 30 – that he would not grant Plaintiffs another extension of the closing date. The Purchase Agreements were executed on January 19, 2021 and originally included an agreed upon closing date of March 5, 2021. Given this, and the relatively straightforward nature of these transactions, it was reasonable for Thomas to demand that Plaintiffs close on or before April 30, 2021, especially when Thomas gave Plaintiffs twenty-four days' notice of such demand. Because Thomas made time of the essence and Plaintiffs failed to close on April 30, 2021, Thomas was entitled to rescind the Purchase Agreements.

*ii.*

In defense of their failure to close, Plaintiffs rely on two recent cases from this Court to argue that they were not required to close on any date prior to June 15, 2021 because Thomas was unable to deliver marketable title to Plaintiffs until the release of the Bailey

Capital Affidavit was recorded. *See Bowers v. Est. of Mounger*, No. E2020-01011-COA-R3-CV, 2021 WL 2156929 (Tenn. Ct. App. May 27, 2021), *no perm. app. filed*, and *Houston Humphreys LLC v. Houston St. Partners, LLC*, No. M2021-00235-COA-R3-CV, 2022 WL 3573404 (Tenn. Ct. App. Aug. 19, 2022), *perm. app. denied*, *not for citation* (Tenn. Feb. 13, 2023).[4] However, *Bowers* and *Houston Humphreys* are both easily distinguishable from this case because each of those cases involved a seller that had notice of a purported cloud on their title and failed to cure the defect. Conversely, Thomas was neither timely provided with notice of the purported cloud on his title nor provided an opportunity to cure such defect.

"The law in Tennessee is that 'a party alleging defects in the performance of a contract is required to give notice and a reasonable opportunity to cure the defects.'" *Greg Calfee Builders LLC v. MaGee*, 616 S.W.3d 545, 554 (Tenn. Ct. App. 2020) (citing *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 229 (Tenn. Ct. App. 2009)). While this principle is applied most often in cases involving construction contracts, it applies equally in this situation. *See Hobbs v. Nottingham*, No. E2013-002602-COA-R3-CV, 2015 WL 399216, at *9 (Tenn. Ct. App. Jan. 30, 2015) (noting that "Tennessee courts recognize the right of sellers to be given an opportunity to remedy any defects in title after execution of sales contracts" (citing *Rogers v. Roop*, 92 S.W.2d 423, 429 (Tenn. Ct. App. 1935))). Because Thomas did not have notice of the purported cloud on his title and a reasonable opportunity to cure the defect, he cannot be found to have committed the first breach of the Purchase Agreements.

It is undisputed that the purported cloud was not the reason the transactions failed to close. Indeed, it appears the Plaintiffs were not even aware of the purported cloud on the title until after Thomas rescinded the Purchase Agreements. The parties did not close because Plaintiffs had not secured financing to fund the purchases. This was the first material breach, and Thomas was entitled to rescind the Purchase Agreements. The trial court did not err in granting summary judgment to Thomas as to Plaintiffs' breach of contract claim.

### B. Rule 54.02 Motion

Following the grant of summary judgment to Thomas, the parties proceeded to a bench trial on their respective claims for a declaratory judgment that they were entitled to some or all of the escrowed earnest monies held by Foothills Title. In their opening statement at trial, Plaintiffs orally made a motion for the trial court to modify the summary

---

[4] By order of the Tennessee Supreme Court, to the extent this Court's Opinion in *Houston Humphreys* "could be interpreted as holding that any unauthorized encroachment of a building on adjoining property per se makes the title to the building's property unmarketable, [such Opinion] is designated 'Not For Citation' in accordance with Supreme Court Rule 4, § E." Order, *Houston Humphreys LLC v. Houston St. Partners, LLC*, No. M2021-00235-SC-R11-CV (Tenn. Feb. 13, 2023).

- 10 -

judgment order due to the issues discussed above. The trial court denied Plaintiffs' motion, holding in its judgment:

> Plaintiffs attempted at trial to reargue conclusions of law set forth in the [trial c]ourt's August 24, 2022 Order on the basis that the [trial c]ourt's August 24, 2022 Order was an interlocutory order subject to modification under Rule 54.02 prior to entry of a final judgment. The [trial c]ourt finds that the August 24, 2022 Order became a final judgment thirty (30) days after its August 24, 2022 entry. After that time, the Order could only be set aside by way of a Rule 60 motion, which Plaintiffs have not filed. Accordingly, based on Plaintiffs' failure to file a Rule 60 motion and the rationale of the [trial c]ourt set forth and [*sic*] pages 2-9 of the attached transcript, which is incorporated as part of this Order, the [trial c]ourt finds that the Plaintiffs' attempt at trial to orally re-argue against the [trial c]ourt's August 24, 2022 Order is belated and the [trial c]ourt will not modify its August 24, 2022 Order.

We disagree with the trial court's findings on this issue, but we conclude that any error is harmless. As explained by the Tennessee Supreme Court:

> Pursuant to Tennessee Rule of Civil Procedure 54, "any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision **at any time** before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." Tenn. R. Civ. P. 54.02; see also Tenn. R. App. P. 3(a) ("[A]ny order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision **at any time** before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties."). Thus, motions seeking relief from a trial court's decision adjudicating fewer than all the claims, rights, and liabilities of all the parties, should be filed pursuant to Rule 54.02.

*Discover Bank*, 363 S.W.3d at 488 (internal footnotes omitted) (emphasis added). Although Rule 54.02 provides a mechanism by which a trial court may certify that a judgment resolving fewer than all the claims is final and appealable pursuant to Tennessee Rule of Appellate Procedure 3(a), the trial court did not make such certification with respect to the summary judgment order in this case. "Because the trial court did not adjudicate all the claims between all the parties, or certify the [summary judgment order] as final pursuant to Rule 54.02, neither Rule 59 nor Rule 60[] applied." *Id.* at 490.

As further set forth by the Tennessee Supreme Court:

> When additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor. . . .
>
> Accordingly, we hold that the "newly discovered evidence" standard need not be satisfied before a trial court revises a partial summary judgment under Rule 54.02 on the basis of additional evidence. When additional evidence is offered by a litigant to overcome a grant of summary judgment pursuant to Rule 54.02, trial courts must undertake the above-stated balancing analysis and should make adequate findings of fact and conclusions of law on the record to support their rulings.

*Harris v. Chern*, 33 S.W.3d 741, 745 (Tenn. 2000) (collecting cases). The only potential additional evidence offered by Plaintiffs in support of their oral Rule 54.02 motion was the live testimony of Eugene R. McCullough, which was made as an offer of proof outside the presence of the trial court judge. However, the substance of Mr. McCullough's testimony did not differ from his opinions set forth in the McCullough Declaration, which had been filed by Plaintiffs in opposition to the motion for summary judgment.

Although the trial court did not undertake the *Harris* balancing analysis, Plaintiffs reargued the same position already considered and ruled upon by the trial court as part of its initial decision on the motion for summary judgment. Like Rules 59 and 60, Rule 54.02 is not intended to allow a party to simply reargue its position already considered by the trial court with respect to a summary judgment motion. *See Guo v. Rogers*, No. M2020-01209-COA-R3-CV, 2022 WL 1220917, at *12 (Tenn. Ct. App. Apr. 26, 2022), *perm. app. denied* (Tenn. Sept. 29, 2022) (considering the *Harris* factors and noting that "a mere bid to re-argue the [t]rial [c]ourt's grant of summary judgment in favor of [a d]efendant . . . is an insufficient basis for granting [a p]laintiff's motion to amend"). Given the circumstances of this case and our conclusion that the trial court did not err in granting summary judgment in favor of Thomas, we further conclude that the trial court's misstatements were harmless as they did not "more probably than not" affect the judgment and did not result in prejudice to the judicial process. *See* Tenn. R. App. P. 36(b). Therefore, we affirm the trial court's denial of the Rule 54.02 motion.

*C. Remaining Issues*

Our affirmance of the trial court's grant of summary judgment and denial of the Rule 54.02 motion are dispositive; as a result, Plaintiffs' remaining issues are pretermitted. *See O'Dneal v. Baptist Mem'l Hosp.-Tipton*, 556 S.W.3d 759, 774 (Tenn. Ct. App. 2018) ("[W]hen presented with multiple issues on appeal, one of which is dispositive, we have consistently found the remaining issues to be pretermitted." (quoting *In re Jamie B.*, No. M2016-01589-COA-R3-PT, 2017 WL 2829855, at *7 (Tenn. Ct. App. June 30, 2017))).

## V. Conclusion

For the aforementioned reasons, we affirm the judgment of the Chancery Court for Hamilton County, and this case is remanded for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellants, Matthew Swilley, Samuel Barr, and SB Capital, LLC, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE